2024 IL App (1st) 230471
No. 1-23-0471
Opinion filed September 27, 2024

Sixth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 60234 |
| | ) | |
| AMMAR HUSSAIN, | ) | Honorable |
| | ) | James Obbish, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justice Oden Johnson concurred in the judgment and opinion.
Presiding Justice Tailor dissented, with opinion.

**OPINION**

¶ 1    Ammar Hussain argues that at sentencing the trial court (i) committed plain error by considering a factor inherent in the offense in aggravation and (ii) imposed an excessive term of imprisonment. We affirm. The trial court highlighted Hussain's many intentional acts, even if he did not intend the specific harm. As for the sentence, the trial court properly considered conduct reasonably within its discretion, and nothing in the sentencing record indicates that it failed to consider all relevant mitigating factors.

¶ 2                                         Background

¶ 3    Hussain was charged by indictment with one count of first degree murder, two counts of reckless homicide, five counts of aggravated fleeing or attempting to elude a peace officer, and two counts of aggravated reckless driving. Hussain entered into a blind plea on one count of reckless homicide while operating a vehicle and refusing to comply with the lawful order of police officers. 720 ILCS 5/9-3(a), (e-7)(2) (West 2018). The State agreed to dismiss the remaining charges in exchange for the plea. A blind plea involves a plea without an agreed sentence. See *People v. Meza*, 376 Ill. App. 3d 787, 788 (2007).

¶ 4    The parties stipulated to the factual basis of Hussain's blind plea. According to the stipulation, on June 20, 2018, at 10:54 p.m., a Jeep driven by Hussain struck a cab, killing the back seat passenger, 66-year-old Diana Lampsa. The cab driver, Ramzan Bhimani, and two pedestrians, Kevin Bourke and Fionnali Bourke, also were injured. Two passengers, Careon Holmes and Ali Faraj, were with Hussain.

¶ 5    Minutes before the crash, two Chicago police officers saw the Jeep, which had a temporary dealer license plate. They ran the license plate, and no records appeared on file, which indicated a fraudulent license plate. The officers activated their emergency lights. Hussain continued driving at a normal speed while the police closely followed. Hussain turned south onto State Street at a normal speed and accelerated as he approached the intersection of Grand Avenue and State Street, which had a red traffic light for his direction of travel. To evade the police, Hussain made a wide right turn from the left lane across several lanes onto Grand Avenue against the red light and in front of stopped traffic. He traveled west on Grand Avenue as police followed with emergency lights now activated.

¶ 6    Once on Grand Avenue, Hussain accelerated to 46 miles per hour in a 30-mile-per-hour zone. He drove through the next intersection at Grand Avenue and Dearborn Street at "full speed"

and against the red light, before hitting the passenger side of the cab. According to the stipulation, "POD" (police observation device) footage showed that the light had been red for 23 seconds at impact. The cab then spun 180 degrees onto the sidewalk, where it struck the Bourkes.

¶ 7      Dash camera footage from inside and outside the cab captured the crash. According to the stipulated facts, Hussain ran from the Jeep immediately after the crash, crossing in front of the cab and "making eye contact." Body-worn camera footage from responding officers showed Hussain hiding in bushes. While officers escorted Hussain to their squad car, he yelled at Holmes to "tell them that he had not been the driver." Information from the Jeep's black box indicated that Hussain was going 46 miles per hour 0.5 seconds before impact and accelerated at 100% throttle for 1.7 seconds before the 0.5 seconds mark. Hussain depressed the brakes at 0.3 seconds before impact, reducing speed to 42 miles per hour at impact.

¶ 8      Faraj told police that Hussain was driving and they had been smoking marijuana in the car earlier in the evening. Holmes told police that Hussain was driving and stated he would not stop when the police activated their lights. Both Holmes and Faraj said Hussain told them to tell police that he was the driver.

¶ 9      Lampsa died from her injuries. Kevin Bourke had a fractured right leg, injury to his left knee, and bruises and contusions to his torso and eye. Fionnali Bourke sustained a broken leg, eight broken ribs, and a punctured lung. Bhimani had several broken ribs and lacerations.

¶ 10      The trial court determined that Hussain entered into the plea freely and voluntarily, accepted the plea, and found him guilty of reckless homicide while operating a motor vehicle and failing or refusing to comply with a lawful order or direction of an authorized police officer.

¶ 11      The parties agreed to use a pretrial investigative report as a presentencing investigation report. On the day of the crash, Hussain was 27 years old. He had a good relationship with his

parents and two siblings. His sister died when he was eight, and he had difficulty dealing with her death. Hussain graduated high school and completed a few semesters of college. He worked as a property manager for his father's real estate company and at a Mobile Gas station since 2015. He lived with his parents and brothers and saw five close friends regularly. Hussain volunteered weekly at a food kitchen and periodically at another charity, helping on food and clothing drives and fundraisers. He also attended religious services weekly.

¶ 12     Hussain first saw a mental health professional a few months after the crash. He was diagnosed with depression and anxiety and started seeing a therapist weekly and later a psychiatrist monthly. He was diagnosed with post-traumatic stress disorder (PTSD), hypermania, and attention deficit hyperactivity disorder. At the time of the report, Hussain took medication and saw a therapist twice a week. He did not drink alcohol but smoked marijuana three times a week from the age of 26 until the crash and then monthly.

¶ 13     Defense counsel submitted 30 letters from Hussain's family, friends, employers, community members, organizations where he volunteered, and two treating mental health professionals, Drs. Sean Welsh and Kimberly Berka. Dr. Welsh stated that he had seen Hussain about 100 times since 2018, noting that Hussain suffered from depression and PTSD and felt genuine remorse and grief. His friends and family noted that Hussain was remorseful and deeply affected by what happened and had become withdrawn and depressed since the crash.

¶ 14     In aggravation, the State highlighted that Hussain's conduct caused a death and seriously injured three others. The State presented victim impact statements read by Kevin Serr, a friend of Lampsa's, and Nicole Lampsa, her niece. Both described the impact that Lampsa's death had on her professional community, family, and friends. The State said the sentence should deter others from fleeing police and there were no substantial grounds to excuse or justify Hussain's criminal

conduct. Hussain had tried to evade capture and not take responsibility by denying he was the driver and telling his friends, whom he abandoned, to deny it. While acknowledging Hussain's lack of prior convictions, the State said he had multiple traffic-related offenses, and his license had been suspended five times. The State rejected probation as unwarranted and requested a sentence of 10 years or higher.

¶ 15    In mitigation, counsel emphasized Hussain's lack of criminal history, except for traffic violations, and that he had taken steps towards rehabilitation by accepting responsibility for his actions. Counsel noted that the offense was not premeditated or malicious but reckless and unintentional, arguing Hussain had no intent to "do evil," and this was a "reckless, foolish" act for which he had "paid the price." Referring to Dr. Welsh's letter, counsel noted that, as a result of depression and trauma, Hussain required mental health rehabilitation as he could no longer function in everyday life. Counsel argued that Hussain was a "completely different man" and requested probation.

¶ 16    In allocution, Hussain apologized to Lampsa's family and acknowledged that nothing he said would change what happened. He took "full responsibility for [his] actions" and that the punishment of knowing he took a life was worse than anything the court would give him.

¶ 17    The court sentenced Hussain to nine years in prison. In announcing its sentence, the court described the crash as a "horrific impact" and "like an explosion." On the point that Hussain did not intend to kill or injure anyone, he decided not to abide by the lawful order of the police, fleeing and evading instead. The court explained that even if the officers were wrong, "you're not allowed to flee from them because they're trying to protect everybody involved." The court emphasized that Lampsa lost her life and three others were injured because Hussain "did not want to accept any responsibility for being the driver of that stolen car."

¶ 18    The court noted Hussain's position that his conduct was reckless, and the letters referenced this as a "terrible accident." The court expressed that this "isn't just [a]n accident," but something "more" because of "[Hussain's] motive." Though Hussain had no intention of hurting anyone, he wanted to evade the police "so that he might not have to spend a night in the police station." The court did not believe there was provocation or grounds to justify or excuse Hussain's conduct. The court also noted Hussain was not suffering from intellectual, mental, or psychological impairments that would mitigate his actions, and the victim who died was over 60 years old.

¶ 19    In addition, the court said Hussain "expressed his motive" to his friends when he refused to pull over for police. The court referenced the video that showed Hussain getting out of the Jeep, walking to the cab, and looking through the driver's window before running. Hussain did not stop to render aid but wanted to "get away" and "avoid all responsibility for what he did no matter what it was." When taken into custody, Hussain expressed no remorse, yelling to his friends to deny that he was the driver.

¶ 20    The court acknowledged that Hussain's lack of criminal history was mitigating. It noted that Hussain came from a "wonderful family" and referenced the letters showing the love his family has for him. Hussain worked two jobs and lived a comfortable life. The court found "the offense of fleeing and alluding [*sic*] a police officer to be a serious offense," not "just a little traffic offense" because "people get killed." It believed probation would "deprecate the seriousness" of Hussain's actions.

¶ 21    Hussain moved to reduce or reconsider the sentence, arguing that the court failed to consider the mitigating evidence adequately and imposed a sentence that was too harsh. The court denied the motion.

¶ 22                                    Analysis

¶ 23  Hussain first argues that the trial court improperly considered a factor inherent in the offense in aggravation—his failure to comply with the police's order to stop. Hussain acknowledges that he failed to preserve this claim and requests that we review it under the plain error doctrine.

¶ 24  To preserve a claim of sentencing error, the defendant must contemporaneously object and file a written postsentencing motion raising the issue. *People v. Hillier*, 237 Ill. 2d 539, 544-45 (2010). Otherwise, this court may review it under the plain error doctrine. *People v. Padilla*, 2021 IL App (1st) 171632, ¶ 122. Under the plain error doctrine, the defendant must first show that a clear and obvious error occurred and that (i) the evidence at sentencing was closely balanced or (ii) the error was so egregious that it denied the defendant a fair sentencing hearing. *Id.* Hussain asserts plain error under the second prong.

¶ 25  A trial court may not consider a factor inherent to the offense in aggravation at sentencing. *People v. Reed*, 2018 IL App (1st) 160609, ¶ 58. There is an assumption that the legislature already considered the elements of the crime when designating the appropriate sentencing range. *People v. Phelps*, 211 Ill. 2d 1, 12 (2004). The court may, however, properly consider the nature and circumstances of the offense, including "the nature and extent of each element of the offense as committed by the defendant." *People v. Brewer*, 2013 IL App (1st) 072821, ¶ 55. "The rule that a court may not consider a factor inherent in the offense is not meant to be applied rigidly, because sound public policy dictates that a sentence be varied in accordance with the circumstances of the offense." (Internal quotation marks omitted.) *People v. Spicer*, 379 Ill. App. 3d 441, 468 (2007). "Even if the sentencing court mentions the improper fact, a defendant must show that the court relied on the particular improper fact when imposing the sentence." *People v. Valadovinos*, 2014 IL App (1st) 130076, ¶ 47.

¶ 26    Generally, when reviewing sentencing issues, this court will not substitute its judgment for that of the trial court absent an abuse of discretion. *Id.* ¶ 48. But, because the rule against double enhancement is one of statutory construction, we review the issue *de novo*. *People v. Polk*, 2014 IL App (1st) 122017, ¶ 31.

¶ 27                              *Issue of Improper Factor in Sentencing*

¶ 28    Hussain argues that the court committed error by considering a factor inherent in the offense as an aggravating factor in sentencing, namely, his refusal to comply with the lawful order of the police. See *People v. Sherman*, 2020 IL App (1st) 172162, ¶ 52 (defendant bears burden of showing trial court considered improper factor in sentencing). While refusing to comply with the lawful order of the police was a factor already inherent in the offense, nothing in the court's remarks suggest it as an additional aggravating factor.

¶ 29    Hussain asserts that "nearly half" of the court's discussion related to his attempts to evade police. Tallying pages tells us little. To equate importance or relevance to the amount of time spent discussing something oversimplifies the multifaceted nature of sentencing. A few words can carry greater weight than several paragraphs. What matters is the substance, context, and objective, which Hussain's argument minimizes. See *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 13 (in determining correctness of sentence, appellate court considers record as whole).

¶ 30    We find that the trial court fully considered and rejected Hussain's repeated contention—made in elocution and through letters on his behalf—that the factual basis of the guilty plea showed an "accident" or a "mistake" rather than a chain of intentional acts. As the court explained, Hussain had "expressed his motive" for refusing to pull over for police—he did not want to be arrested for driving a stolen car. That led to Lampsa's death and the injury of three others because, as the trial court recounted, Hussain "did not want to accept any responsibility for being the driver of that

- 8 -

stolen car." And he tried to "avoid all responsibility" by leaving the scene and asking his companions to lie to officers.

¶ 31    Hussain pleaded guilty not only to reckless homicide (720 ILCS 5/9-3(a), (d)(2) (West 2018)), but also to reckless homicide while operating a vehicle and while refusing to comply with the lawful order of police officers (*id.* § 9-3(a), (e-7)(2)). The additional factor allowed the trial court to issue a greater sentence. The sentencing range for reckless homicide is two to five years, while the sentencing range Hussain faced was 3 to 14 years. *Id.* §§ 9-3(a), (d)(2), (e)(7); 730 ILCS 5/5-4.5-40(a) (West 2018). The trial court sentenced Hussain to nine years, in the midrange of the offense to which he pleaded guilty, but four years more than what would have been allowed for reckless homicide alone. Generally speaking, Hussain is correct that refusing to comply with the lawful order of the police was a factor already taken into the offense and should not be used as an additional aggravating factor.

¶ 32    But, the sentencing court is permitted to thoroughly consider the circumstances of the offense, which is what this court did. The trial court recounted the incident in detail by reviewing the facts of the offense almost frame by frame—much of it was caught on video and the parties had stipulated to the facts. Often, as here, facts recounted serve double duty, one appropriate and another not. While Hussain's refusal to comply with the officer's lawful order to stop could not be considered as an additional aggravating factor, the fact that he drove a stolen vehicle was not a factor in the offense to which he pled. Nor the fact that he tried to flee the scene on foot and evade responsibility for the stolen vehicle. Nor the fact that he encouraged others to lie on his behalf and failed to render aid to those he injured.

¶ 33    Contrary to the dissent's view, we find the trial court sought transparency and thoroughness in sentencing. When rejecting Hussain's core argument, the trial court appropriately reviewed the

circumstances and severity of the offense, including Hussain's actions and motivations before and after the crash. See *People v. O'Toole*, 226 Ill. App. 3d 974, 992 (1992) ("sentencing court need not unrealistically avoid any mention of such inherent factors, treating them as if they did not exist").

¶ 34    The flaw in both Hussain's and the dissent's view lies in construing most of what the judge said as potentially significant to the term imposed, an approach that could have the unintended effect of discouraging sentencing judges from providing in-depth explanations for fear appellate courts will misconstrue or overly scrutinize their decisions. In contrast, we give due weight to the content, nature, circumstances, and entire context. That the judge spoke at length when considering the parties' contentions should be lauded, not faulted. See, *e.g.*, *People v. Jackson*, 375 Ill. App. 3d 796, 805 (2007) (McDade, J., specially concurring) (contending "specific articulation on the record should be required" as trial court balances factors at sentencing); *id.* at 809 (Wright, J., concurring in part and dissenting in part) (contending reviewing court "should require proper judicial balancing that is apparent from the record").

¶ 35    The Unified Code of Corrections dictates that the trial court "afford [Hussain] the opportunity to make a statement in his own behalf." 730 ILCS 5/5-4-1(a)(6) (West 2018). Hussain took the opportunity to attack the factual basis of his guilty plea, which distinguishes this sentencing hearing from *People v. Dowding*, cited by the dissent. *Infra* ¶ 55 (citing *People v. Dowding*, 388 Ill. App. 3d 936, 939-940, 945 (2009) (defendant contested neither basis of plea nor probation revocation when speaking in elocution)). And that Hussain did so at great length, both in elocution and through letters on his behalf, forced the trial court to give closer consideration to the gravity of Hussain's conduct, unlike the dissent's other case *People v. Abdelhadi*. *Infra* ¶ 55 (citing *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 14 (finding "trial court's reference to the

defendant's threat of harm to others, with no elaboration or description of that factor, did not amount to merely a mentioning within the 'nature and circumstances' of the crime")).

¶ 36    Trial courts are permitted to consider the nature and circumstances of the offense and the degree and gravity of Hussain's conduct, which is all the trial court did here. *Sauseda*, 2016 IL App (1st) 140134, ¶ 15; *Brewer*, 2013 IL App (1st) 072821, ¶ 55. And the trial court did so in the wake of Hussain's summary at elocution:

> "Sometimes in life we can't control what is put in front of us, how one decision, one moment, one second, one mistake could change the entire course of your life forever. My actions on that day were never intentional[ ] nor malicious but this was a terrible mistake that I have to live with for the rest of my life."

Notwithstanding the dissent's contention (*infra* ¶ 53), the factual basis of the plea and the evidence before the trial court bore no resemblance to the "one decision, one moment, one second, one mistake" about which Hussain waxed in the passive tense as being "put in front of [him]."

¶ 37    The end of Hussain's long chain of intentional acts was a "horrific impact" and "like an explosion," likely resulting in the death of a woman over 60 years old within moments and injuries to three others. The court thus rejected the notion that the crash was just an "accident"; instead, it was something "more" because Hussain had hung fraudulent license plates, fled from police, and encouraged others to lie on his behalf—all to avoid responsibility for possessing a stolen Jeep.

¶ 38    The trial court carefully considered and rejected Hussain's attack on the plea's factual foundation, an appropriate approach consistent with Illinois precedent. See generally *People v. Barker*, 83 Ill. 2d 319, 333 (1980) (trial court may accept guilty plea, despite innocence claim at elocution, if proper factual basis exists). Hussain explicitly denied the factual basis for his plea, "My actions on that day were never intentional[.]" Thus, the record belies the dissent's assertion

- 11 -

that Hussain's elocution and the letters submitted on his behalf "in no way" challenged the factual basis of his plea or the other evidence before the trial court. *Infra* ¶ 54. Further, the dissent misapprehends the context of Hussain's statement to the court, construing it to cover just "the moment" he struck the cab carrying Lampsa rather than all his actions, as we have done. *Infra* ¶ 54.

¶ 39    We find that the trial court did not improperly rely in aggravation on a factor inherent in the offense. Thus, no plain error occurred, and Hussain's request for a plain error review is without merit. See *People v. Wooden*, 2014 IL App (1st) 130907, ¶ 10.

¶ 40                                    *Issue of Length of Sentence*

¶ 41    Next, Hussain argues that his sentence was excessive given the "facts and circumstances." Specifically, he claims that the court abused its discretion by (i) placing significant weight on the need to deter, (ii) evaluating Hussain's actions only in the immediate aftermath of the crash to assess his remorse, and giving no consideration to his remorse at sentencing, (iii) failing to consider his ability to comply with probation, and (iv) failing to give sufficient weight to his potential for rehabilitation.

¶ 42    The Illinois Constitution provides that a trial court shall impose a sentence balancing "the seriousness of the offense" and "the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The trial court has broad discretion in sentencing. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). In the sentencing context, an abuse of discretion occurs when a sentence is "manifestly disproportionate to the nature of the offense." *People v. Jones*, 2019 IL App (1st) 170478, ¶ 50. A reviewing court will not substitute its judgment for the trial court's because it would have weighed the sentencing factors differently. *Alexander*, 239 Ill. 2d at 213.

¶ 43    In fashioning a sentence, the sentencing court balances the retributive and rehabilitative purposes of punishment, including factors in aggravation and mitigation such as "the defendant's age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education, as well as the nature and circumstances of the crime and of defendant's conduct in the commission of it." *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002).

¶ 44    A trial court need not recite and assign a value to each aggravating and mitigating factor. *People v. Williams*, 2019 IL App (1st) 173131, ¶ 21. Still, the seriousness of the offense is the most important factor in determining an appropriate sentence. *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123. The court need not "give greater weight to mitigating factors than to the seriousness of the offense nor does the presence of mitigating factors either require a minimum sentence or preclude a maximum sentence." *Id.* We presume that the trial court properly considered all mitigating factors and rehabilitative potential before it, and the defendant bears the burden to show the contrary affirmatively. *People v. Brazziel*, 406 Ill. App. 3d 412, 434 (2010).

¶ 45    Hussain contends that the sentence was excessive because the court did not sufficiently consider his remorse, as expressed in allocution, and his rehabilitative potential, where he accepted responsibility for his actions and engaged in a treatment plan. Also, the court (i) improperly considered in aggravation deterrence of others where his conduct was unintentional and reckless and (ii) failed to consider his likelihood of complying with probation.

¶ 46    Hussain essentially requests that we reweigh the factors in aggravation and mitigation, assigning lesser weight to the seriousness of the offense than to his rehabilitative potential and restoration to useful citizenship. This we cannot do. See *People v. Hilliard*, 2023 IL 128186, ¶ 40 (rehabilitative potential is not entitled to greater weight than seriousness of offense). Hussain contends that deterrence was irrelevant, but the trial court was referring to conduct reasonably

within its discretion to deter—reckless driving, ignoring red traffic lights, and speeding, all while fleeing the police.

¶ 47 The trial court presumed to have properly considered all relevant mitigating factors, which includes Hussain's likelihood to comply with the term of a probation unless Hussain demonstrates otherwise. *Brazziel*, 406 Ill. App. 3d at 434. The trial court considered probation but determined that would "deprecate the seriousness" of Hussain's actions, thereby appropriately giving greater weight to the offense's seriousness than Hussain's potential for rehabilitation or the objective of restoring him to useful citizenship. See *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11. Moreover, the record demonstrates that the court considered the letters in mitigation, which spoke to Hussain's remorse, including his treating psychologist's letter. The presence of mitigating factors neither requires a minimum sentence nor precludes a maximum. *Harmon*, 2015 IL App (1st) 122345, ¶ 123. Besides his sentence itself, Hussain fails to point to anything in the record that rebuts the presumption that the court considered the mitigating evidence. "[A] harsh sentence, standing alone, does not show that the court ignored mitigating evidence." *People v. Pace*, 2015 IL App (1st) 110415, ¶ 92.

¶ 48 Affirmed.

¶ 49 PRESIDING JUSTICE TAILOR, dissenting:

¶ 50 Although the trial court has broad discretion when imposing a sentence, it may not consider an element of the offense as an aggravating factor. *Phelps*, 211 Ill. 2d at 11-12; *People v. Gonzalez*, 151 Ill. 2d 79, 83-84 (1992) (a single factor cannot be used both as an element of an offense and as a basis for imposing a "harsher sentence than might otherwise have been imposed"). Here, Hussain pled guilty to causing the death of the victim "while failing or refusing to comply with a lawful order or direction of an authorized police officer." Yet, when imposing a nine-year sentence,

the trial court went on at length about Hussain's failure to comply with police directives and his flight from the police, an element of the offense for which he was convicted. Because it is not possible to determine whether the trial court aggravated Hussain's sentence on account of his failure to comply with police orders and flight from the police, this cause must be remanded for resentencing. *People v. Bourke*, 96 Ill. 2d 327, 332 (1983) ("Where the reviewing court is unable to determine the weight given to an improperly considered factor, the cause must be remanded for resentencing.").

¶ 51 While a trial court "need not unrealistically avoid any mention of such inherent factors, treating them as if they did not exist" (*O'Toole*, 226 Ill. App. 3d at 992), it is reversible error for a sentencing judge to not merely mention, but rely on, an improper aggravating factor in sentencing. *Abdelhadi*, 2012 IL App (2d) 111053, ¶ 17. Although the majority contends that "no plain error occurred" and that "Hussain's request for a plain error review is without merit" (*supra* ¶ 39), whenever a trial court considers erroneous aggravating factors in determining an appropriate sentence, the defendant's "fundamental right to liberty" is unjustly affected, which is a serious error allowing for plain-error review. (Internal quotation marks omitted.) *Abdelhadi*, 2012 IL App (2d) 111053, ¶ 7.

¶ 52 Here, the trial court's comments went well beyond an "isolated remark" or passing reference to Hussain's flight from the police and failure to comply with police orders. But see *People v. Fort*, 229 Ill. App. 3d 336, 340 (1992) ("[a]n isolated remark made in passing, even though improper, does not necessarily require that [the] defendant be resentenced"). A review of the hearing transcript shows that the trial court's sentencing comments spanned 15 pages. Many of the court's comments—which were made after the court heard from Hussain directly—were directed at Hussain's act of fleeing the police. In relevant part, the court stated,

"Counsel for Mr. Hussain and Hussain himself *** repeatedly argued as I would in their position this is just a reckless act and many of the letters from people, probably many of them here today, refer to this terrible accident, talk about it as a mistake. A mistake like an accident is that the death of this lady and multiple injuries to other people it was not Mr. Hussain's intent, I agree, he didn't want to do any damage to Ms. Lampsa. He didn't want to hurt that couple on the sidewalk. He didn't want to hurt the cab driver but it ignores something that I think is very relevant in this particular situation to only look at it that way.

***

*** [W]hat it ignores is the fact that this behavior on the part of Mr. Hussain that there was an intent and there was a purpose and it was the intent to avoid the legitimate actions of the police officers who had placed their—turned their traffic signal or vehicle signals on indicating that he should stop, and that's a choice that Mr. Hussain made to continue to not abide by the lawful order of police officers and that's a law, and it is called fleeing and [e]luding. We—even if the officers are wrong even, if they didn't have a reason, you're not allowed to flee from them because they're trying to protect everybody involved, trying to protect the driver of the car who the officers are trying to pull over from, you know, fleeing and causing an accident where they get killed or injured or one of their passengers suffers the same thing. We try to—we don't want the officers to get hurt for doing their job because somebody T bones them in an intersection, because in an effort to follow the offender, you know, they end up running a red light or a stop sign or going faster than the speed limit and some innocent person crashes into them, and we don't want to happen exactly what happened here where the offending vehicle or the police vehicle runs into some completely innocent person in a vehicle or whatever and it causes them to be

injured, causes them to pass on or even do property damage. That is what the law is trying to avoid. That's why as citizens, you know, we are supposed to respect the law and not flee from the police. We don't have the right to resist arrest. We don't have the right to get into a fight with the police officers even if the basis for the arrest isn't really there.

Let's say the officers made a mistake. They thought they were arresting some person who committed a crime and it was the wrong person. That wrong person, that innocent person doesn't have a right to resist those police officers. That's the law.

That's what causes this particular offense to take place. That's why we don't have Ms. Lamp[sa] with us anymore. That is why this couple from England suffered multiple broken bones and broken ribs, that's why the cab driver apparently had multiple ribs that were broken in this particular case. And that's a decision that Mr. Hussain made. I can't help but speculate and consider the material that was presented to me by agreement of the parties with respect to the facts of the case, it's because [Hussain] was in a car that wasn't his, without the permission of the owner.

[Hussain] may have this remarkable record of nothing but sort of minor traffic offenses in his background but *** I think the car was listed as a stolen car from Delaware and then it had a f[i]ctitious dealer plate on it that didn't belong to it, and that's why your loved one is dead, and that's why this family grieves because he did not want to accept any responsibility for being the driver of that stolen car, he was going to endanger everybody else. If he got away that would be great for him. Obviously he was hoping to getaway without anybody getting hurt, hoping the car didn't get damaged, certainly he didn't want to kill anybody, but it was a risk that he deliberately took.

This isn't just [a]n accident. *** [T]his is more. One has to look at what the defendant's motive was at the time, and believe me I know, I know he never wanted to hurt the lady that passed away, never wanted to hurt those people on the street or the cab, he just wanted to get his rear end away from the police so that he might not have to spend a night in the police station until somebody came and made him—

***

*** The defendant expressed his motive as to what he was doing to the people that he had chosen to have in the car with him. One of them one was a man, another one was a woman. He makes those statements according to those witnesses, I'm not pulling over; oh, shit, the police are behind us. He broadcasts, he says what he intended to do. He is not going to get his night out with this lady friend and a bottle of alcohol that they had just purchased at some liquor store and maybe the rest of the marijuana that was in the car, he is not going to let those Chicago Police officers interfere with his good time because that's more important than the citizens who are walking around *** in the heart of the near north side of Chicago. ***

***

*** [Hussain] doesn't stop to render aid to anybody. ***

What does he do? He takes flight. He wants to get away. He wants to avoid all responsibility for what he did no matter what it was, no matter how serious it may have been and probably wasn't going through his mind but it was all about Mr. Hussain, it was all about getting away. I will not be held responsible for my actions, and so he thinks he is going to be able to evade the police officers but they're right behind him ***. ***

***

It's all about—at that time it was all about *** protecting Mr. Hussain, no—no remorse, no is everybody okay, no I'm sorry. ***

\* \* \*

*** He didn't need to *** try to flee the police who were conducting an investigation based on the plates that didn't belong to the vehicle. Those are conscious decisions, not that I'm going to go out and hurt somebody, not that I am going to go and get arrested by police or anything like that, but I'm going to be in *** a car that I don't belong in, and then, oh, oh, now that I'm in that car, I'm not going to take any responsibility. I'm going to take off.

*** I will readily admit *** I find the offense of fleeing and [e]luding a police officer to be a serious offense. I don't think it's just a little traffic offense. That's why it is a felony as opposed to a misdemeanor and this is exactly why I take it so serious because people get killed. Children get killed. People who are passengers in the fleeing vehicle get tossed out of the car when there is an accident. The driver—the offender gets killed. Police officers get killed. And then what happens, taxpayers, whatever, if there is a chase and somebody gets killed, then the taxpayer is paying because they got to pay millions of dollars because the police were chasing somebody, perfectly legitimate chase because the person was an offender but they're never held responsible. Oh, they shouldn't have chased. So what do we have, we now live in a city where you can be observed on pod cam killing another individual, which has happened, and then the police are, you know, told about it, and they start following the killer that they've seen on a pod cam and, you know, it's recorded, it's not something that you're just making up, and they call off the chase because, well, they crossed Cicero Avenue so now they're in Cicero, there will be no more chasing.

- 19 -

The murderer gets away. Do they go home and say geeze, I am sorry, I will never do that again? That's possible. Maybe they also just go out and say I can keep committing murders and I am incentive[z]ed to run from the police. That is why I think fleeing and [e]luding is such a serious crime. And that's even if there is no horrible result like happened here where a woman lost her life, and it's affected so many people."

¶ 53 The majority asserts that "nothing in the court's remarks suggest [that Hussain's act of failing to comply with police orders] [w]as an additional aggravating factor." *Supra* ¶ 28. However, Hussain's repeated failure to comply with police orders permeated the trial court's comments at sentencing. The majority tries to explain away the court's extensive commentary on Hussain's failure to comply with police orders by asserting that Hussain "attack[ed] the factual basis of his guilty plea" and "did so at great length, both in [al]locution and through letters on his behalf," which "forced the trial court to give closer consideration to the gravity of Hussain's conduct." *Supra* ¶ 35. Hussain did not challenge the factual basis of his guilty plea. Rather, he said:

"Over the past 4 and a half years all I wanted to do was tell the family how sorry I really am. Nothing I say today will change what happened in June of 2018. Sometimes in life we can't control what is put in front of us, how one decision, one moment, one second, one mistake could change the entire course of your life forever. My actions on that day were never intentional[ ] nor malicious but this was a terrible mistake that I have to live with for the rest of my life. I am sorry for all of the pain and suffering my consequences have caused everyone involved. I am learning how to forgive myself and have allowed God to take full control of my life. The pain I have caused I will never be able to take away from you. No one can. There is nothing I can say today that will change the perspective you all have

- 20 -

towards me. I take full responsibility for my actions. My words will never fill that void. I pray that one day you can find it in your hearts to forgive me and I hope this will bring me closure, but I want you to know there is no bigger punishment that I will get from this court than the one I have to deal with for the rest of my life knowing a life was lost. I need you to know that my heart breaking, loving parents didn't raise me this way and I'm not okay with what happened that day. I would like also to apologize to my family and loved ones for putting them through this pain and suffering. My sincerest condolences go out to you, my most deepest regrets, that was a terrible day. I'm in front of you today all pleading for forgiveness and mercy. I deal with a lot of mental health issues and knowing what I've learned of Diana Lampsa she would have been somebody I would have ran to for help and tried to fix my issues and I apologize once again, I am truly sorry to the court and to the family and to my family, to anybody involved."

Nor did the letters submitted on Hussain's behalf attack the factual basis for Hussain's guilty plea. Instead, those who wrote on Hussain's behalf attested to his character and how he admitted that he "exhibited a serious lack of judgment," expressed that he harbors "a deep sense of remorse for this serious mistake he has made," indicated that he "hopes for forgiveness for his terrible mistakes," and noted that he "has lived with the memory of his actions taking an innocent life for the last 4½ years, [which] will haunt him until the day he dies." In their letters, Hussain's friends, family members, and work colleagues asked the court for leniency in sentencing and expressed their belief that if "given a second chance [Hussain] will continue to be a valued member of society."

¶ 54    The majority wrongly concludes that Hussain put the factual basis of his plea at issue when he said in allocution that his "actions on that day were never intentional[ ] nor malicious" and that he made a "mistake," and when he offered letters that referred to Diana Lampsa's death

as an "accident." Reckless homicide has no intent requirement; Hussain pled guilty to "unintentionally, without lawful justification, while driving a motor vehicle, recklessly perform[ing] acts in such a manner as were likely to cause death or great bodily harm to some individual *** and *** operating a motor vehicle while failing or refusing to comply with a lawful order or direction of an authorized police officer." Thus, Hussain's comment that his actions that resulted in Diana Lampsa's death were neither "intentional[ ] nor malicious," a fact that the trial court itself twice confirmed when imposing sentence, and the letters' references to the June 2018 incident as an "accident" in no way attack the factual basis for Hussain's guilty plea. The "accident" that Hussain was referring to in allocution was the moment his vehicle struck the vehicle in which Lampsa was a passenger, resulting in her death. He never claimed to have accidentally fled from police, accidentally hung fraudulent license plates on the stolen Jeep, or accidentally encouraged others to lie on his behalf—all to avoid responsibility for possessing a stolen Jeep. Thus, the majority takes Hussain's allocution statement out of context and unreasonably ascribes to it an entirely different connotation. The majority's assertion is otherwise unsupported by the record, and its attempt to distinguish Hussain's case from *Dowding* and *Abdelhadi* on this basis fails. *Supra* ¶ 35.

¶ 55　As noted above, the trial court extensively discussed Hussain's failure to comply with police orders at sentencing, an element of the offense for which he was convicted. A trial court should be lauded for explaining its decision because it promotes public confidence in the justice system, but it cannot rely on impermissible factors at sentencing. Because it is unclear from the record here how much weight the court gave this improper factor when deciding on a nine-year sentence for Hussain, remand for resentencing is required. See *Bourke*, 96 Ill. 2d at 332; *Dowding*, 388 Ill. App. 3d at 945 ("When a trial court considers an improper factor in aggravation, the case

must be remanded unless it appears from the record that the weight placed upon the improper factor was so insignificant that it did not lead to a greater sentence."); *Abdelhadi*, 2012 IL App (2d) 111053, ¶ 19 (remanding for a new sentencing hearing even though the defendant's sentence was below the maximum because it was four years above the minimum and it was impossible for the court to determine how much weight the trial court placed on the improper factor). That the court also relied on other permissible aggravating factors, including the victim's age and the serious harm stemming from Hussain's conduct, does not affect our analysis. See *Abdelhadi*, 2012 IL App (2d) 111053, ¶ 12 ("Even in the presence of other, legitimate aggravating factors like the defendant's being on probation at the time of the offense and his criminal history, we conclude that the trial court's reliance on the threat of 'harm to others' was improper.").

¶ 56    For the reasons above, I respectfully dissent.

*People v. Hussain*, 2024 IL App (1st) 230471

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-CR-60234; the Hon. James Obbish, Judge, presiding. |
| **Attorneys for Appellant:** | Patrick W. Blegen, of Blegen & Associates, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Brian K. Hodes, and Leon Farbman, Assistant State's Attorneys, of counsel), for the People. |