2025 IL App (1st) 231552-U

No. 1-23-1552

Order filed April 9, 2025

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 10949 |
| | ) | |
| WILLIAM CANO, | ) | Honorable |
| | ) | Michele M. Pitman, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Lampkin and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for predatory criminal sexual assault is affirmed over his contentions that (1) the admission of other-crimes evidence was erroneous, and (2) his 30-year prison sentence was excessive.

¶ 2    Following a jury trial, defendant William Cano was convicted of predatory criminal sexual

assault of a child (PCSA) and sentenced to 30 years' imprisonment. On appeal, Cano contends that

the trial court abused its discretion when it admitted other-crimes evidence that was more prejudicial than probative. He also contends that his sentence is excessive. We affirm.[1]

¶ 3                                      I. BACKGROUND

¶ 4      Cano was charged by indictment with PCSA, alleging contact between his penis and H.C.'s mouth that occurred between May 2010 and May 2012 when H.C. was under 13 years old and Cano was at least 17 years old.

¶ 5      The State filed a pretrial motion to admit evidence of other crimes under section 115-7.3 of the Code of Criminal Procedure (Code). 725 ILCS 5/115-7.3 (West 2010) (admission of other-crimes evidence in trials for sex offenses for any relevant purpose including propensity). In the motion, the State noted that H.C. and K.C. were Cano's daughters and H.C. was between five and seven years of age between May 2010 and May 2012. Following a jury trial in case number 18 CR 10950, Cano was acquitted of multiple counts of PCSA of K.C., convicted of aggravated criminal sexual abuse of K.C., and sentenced to six years in prison. The State sought to introduce evidence from that case that Cano sexually abused K.C. in his home between March 2011 and March 2013, when she was 10 to 11 years old.

¶ 6      In the motion, the State argued that the other crimes were not remote in time, as they were committed in a timeframe overlapping the charge at bar "as a continuous course of conduct during" the lives of H.C. and K.C. The State maintained the other crimes against K.C. were significantly similar to the offense against H.C., as Cano victimized his young daughters H.C. and K.C. in his home. The State pointed out that the other-crimes evidence could refute an argument that the incident with H.C. occurred innocently during bathing. It sought to introduce the other-crimes

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

evidence to prove Cano's intent, absence of an innocent frame of mind, and propensity to commit sexual offenses.

¶ 7    Cano argued in response that the denial of the State's similar motion in case 18 CR 10950, seeking to introduce the incident involving H.C. in the case involving K.C., called for a similar result here. He argued that the "incidents are relatively close in time, but no exact dates are known or provided for either incident, just an overlapping window for both incidents." Cano further argued that the incidents were not sufficiently similar to show propensity, as K.C was sexually abused without penetration when she was between 10 and 11 years old while H.C. was allegedly sexually assaulted with penetration when she was between five and seven years old. Lastly, Cano maintained that the evidence would be more prejudicial than probative, especially in light of what he assumed would be, "the limited, unspecific, and frankly confusing nature of K.C.'s testimony" if the trial court "allowed her to testify only about the charges for which Mr. Cano was convicted but not the things she claimed happened to her for which Mr. Cano was acquitted."

¶ 8    At the hearing on the motion on other-crimes evidence, the State argued that there were two significant differences between the denied other-crimes motion in case 18 CR 10950 and the motion here: Cano had since been convicted of the aggravated criminal sexual abuse of K.C., and K.C. had since testified, rather than the State merely making an offer of proof. The court granted the State's motion, noting the overlapping time frames of the pending charge and the other offense, that both involved Cano victimizing his own daughters in his home, and that Cano was convicted of the aggravated criminal sexual abuse of K.C. The certified conviction would not be admitted except to impeach Cano if he testified.

¶ 9    Shortly before trial, the State and Cano both filed motions to reconsider. The State requested the court admit the certified conviction in case number 18 CR 10950. Cano argued that

the court did not give sufficient weight to the difference between the charged offense and the other-crimes offense. He also argued that the court "did not consider the bizarre circumstances of this case, in which K.C. testified at a prior trial about numerous other, more extreme sexual acts committed against her by Mr. Cano simultaneously to the other crimes the State is trying to admit."

¶ 10    Cano maintained that K.C.'s evidence would create a trial within a trial, since it would be "at least as prominent as H.C.'s" evidence. Cano noted that the court had denied the similar other-crimes motion in case 18 CR 10950. Cano also argued that the State should not be allowed to introduce both the certified conviction in case number 18 CR 10950 and K.C.'s testimony and stated that the jury would learn from the certified conviction that Cano was charged with PCSA of K.C. but was acquitted.

¶ 11    Following arguments on the motions to reconsider, the court granted the State's motion and denied Cano's motion. The certified conviction would be admitted without the sentence, and defense counsel would be free to argue that Cano was acquitted of PCSA.

¶ 12    Just before the 2023 trial commenced, the State asked to be heard again on whether the defense could introduce evidence that Cano was acquitted of PCSA. It requested such evidence be barred, as K.C. would not be testifying regarding those charges, only the sexual abuse of which Cano was convicted. Cano argued that the acquittals were relevant to demonstrate to the instant jury the full scope of what the jury in K.C.'s case determined.

¶ 13    The court stated that it was not prepared to rule yet. The State responded that if the court was "going to allow the not guilty to come in, then the State is going to be asking that [K.C.] be allowed to testify to all of the conduct." Cano maintained his objection to the jury hearing K.C. testify regarding the conduct underlying the PCSA charges. The State argued that the jury would be confused and misled by learning of Cano's acquittal of PCSA when K.C. was not testifying

regarding those charges. The court decided that, as it was still barring K.C. from testifying regarding the PCSA charges, it would not allow the jury to hear that Cano was acquitted of PCSA.

¶ 14    At trial, H.C. testified that she was born in 2005 and lived with her mother Kristin C., her stepfather, and her younger sister. K.C. was H.C.'s older sister and Cano was H.C.'s father. Between May 2010 and May 2012, when H.C. was five or six years old, she and her sisters would go to Cano's home to spend the weekend.

¶ 15    On one weekend at Cano's home, H.C. and Cano were alone in the bathroom as H.C. was bathing. Cano was wearing a shirt but no clothing below the waist, and he told H.C. to exit the tub and get on the floor. She went "on all fours" on the floor until she found that uncomfortable and moved to her hands and knees. He was standing when he then put his penis into her mouth and moved it in and out. This caused H.C. pain in her jaw, gagging, and difficulty breathing. When he stopped, she dressed and went to her bedroom. She did not tell anyone when she returned home, as she then did not know that Cano's actions were wrong.

¶ 16    H.C. stopped visiting Cano in 2011 when she was six or seven years old. After a sixth-grade presentation, H.C. realized Cano's actions were wrong. She did not report the incident until about a year later, as she worried her mother and stepfather would be upset with her. After she told her mother and stepfather what happened, she was the subject of a 2018 forensic interview at the Children's Advocacy Center (CAC). H.C. did not mention in the interview that her jaw hurt, or she was gagging and had difficulty breathing, because H.C. believed the interviewer wanted to know what Cano had done rather than how it had affected her.

¶ 17    On cross-examination, H.C. testified that, as best as she could recall, Cano did not touch her inappropriately other than the incident she described. She could not remember which weekend or day of the weekend the incident occurred, nor how long the incident lasted. She and Cano never

discussed the incident, and he never told her not to tell anyone. After a brief video segment of H.C.'s 2018 interview was shown, in which she stated she did not remember seeing anything, H.C. explained that she did see Cano's penis and her 2018 answer "was that I did not see anything come out of his penis." Another brief segment of the 2018 interview was shown, in which H.C. was asked how it felt when "he was going in and out" and replied, "It was weird, it was just weird, *** a rubbing in my mouth." H.C. acknowledged that she did not mention "changing [her] position" on the floor in the 2018 interview.

¶ 18    K.C. testified that she was born in 2001. Between March 2011 and March 2013, when K.C. was 10 to 12 years old, she and her sisters would visit Cano on the weekends. On many occasions during these visits, Cano would take K.C. into her bedroom while her sisters were asleep in another bedroom. He undressed her and had her touch his penis with her hands. She stroked it as he directed until he "had an orgasm." Cano told her not to tell anyone. Visits ended when K.C. was 11 years old, and she had no further contact with Cano. She did not tell anyone what Cano had done because she "didn't want to become an object of scrutiny." When K.C. was 17 years old, she told her mother.

¶ 19    Kristin C. testified that her three daughters, including H.C. and K.C., visited Cano almost every other weekend between 2008 and 2012, including the period between May 2010 and May 2012. Kristin C. became concerned about the visits in November 2012, when she confronted Cano and he ended the visits. In 2018, H.C. told Kristin C. and her husband what Cano had done to her, and she was crying and nervous as she told them. Kristin C. reported the incident to H.C.'s health care provider, who in turn reported it to the authorities. Kristin C. took H.C. to the CAC for an interview in June 2018.

¶ 20    On cross-examination, Kristin C. clarified that she did not end the visits or prohibit her daughters from contacting Cano. During the visits and for years afterwards, Kristin C. had not suspected sexual abuse of her daughters.

¶ 21    The State entered into evidence the birth certificates of Cano from 1980 and H.C. from 2005, and Cano's certified conviction for aggravated criminal sexual abuse of K.C. in case 18 CR 10950.

¶ 22    The court denied Cano's motion for a directed verdict and his renewed motion to admit the PCSA acquittals from case 18 CR 10950.

¶ 23    At Cano's behest, the parties stipulated that H.C. met a medical professional in April 2018 and "reported being molested by her biological father at the age of [five]."

¶ 24    Following closing arguments, instructions, and deliberations, the jury found Cano guilty of PCSA.

¶ 25    In his posttrial motion as supplemented, Cano challenged the granting of the State's other-crimes motion, including the granting of the State's written motion to reconsider and its oral motion to reconsider at trial. Cano rested on his written motion as supplemented, which the court denied.

¶ 26    Prior to sentencing, the court ordered a presentencing investigation report (PSI). The PSI reflected Cano's criminal history, consisting of vehicular offenses and his aggravated criminal sexual abuse conviction in case 18 CR 10950. In the PSI, Cano stated that he had a "good" relationship with his parents but his childhood was "rocky" as he was the youngest of 11 "toxic" siblings. He was not neglected but "was the victim of physical, sexual and emotional abuse." Cano attended high school until he completed grade 11, when he went to work. Cano intended to obtain his GED while incarcerated. Cano was not working when he was arrested in this case but was

being supported by his family; his last job had been in 2017. He admitted that his finances were "bad" before his arrest—he was in arrears on child support payments, and he was estranged from his three daughters and their mother. He maintained his physical health was "good," though he had been shot and stabbed in the past.

¶ 27    The PSI reflected that Cano was diagnosed with post-traumatic stress disorder (PTSD) and depression, for which he was receiving medication and a monthly consultation with "a mental health professional." Cano acknowledged abusing drugs and alcohol. He opined in the PSI that "the justice system let him down," and that H.C. and K.C. "were 'programmed' by their mother."

¶ 28    At the sentencing hearing, the parties accepted the PSI, and the court stated that it had reviewed and would consider the PSI. The State entered into evidence H.C.'s victim impact statement, in which she noted that Cano had been abused as a child but "made the choice to project [his] past onto" her and K.C., effectively ending H.C.'s childhood and hampering her ability to trust. Noting that the sentencing range was 6 to 60 years in prison, the State argued for a sentence befitting Cano's "betrayal" of his daughters and the need for deterrence.

¶ 29    Defense counsel asked for a sentence near the minimum six years in prison, arguing that Cano had been severely sexually abused as a child by his brothers, that he ended visitation with his daughters shortly after the incident with H.C., and that he had no criminal history beyond the offenses here, so that it was unlikely his offenses would reoccur. Cano's records of mental health treatment and continuing education in jail were entered into evidence, as was a letter from Cano's girlfriend Laura W., stating that Cano was kind and a diligent worker who had provided for her.

¶ 30    Cano addressed the court, stating, "I know I could not have done these things that I'm being accused of, that I have been supposedly found guilty of." He also stated that "I have a philosophy

now, in this program in [jail] and I've made it a part of my daily life," and "I choose to make the necessary changes in my life to be a successful, productive member of our community."

¶ 31    The court sentenced Cano to 30 years' imprisonment, noting that H.C. was six years old when he assaulted her. In doing so, the court pointed out that Cano had a fairly minimal criminal history, except for the case involving K.C., that he had a history of drug and alcohol abuse, and that he had been abused sexually and otherwise as a child. The court rejected the proposition that Cano's offenses would not recur, as "he removed himself from the young children in the home" only "after sexually abusing and sexually assaulting two different daughters." The court acknowledged the "good" things Cano had done while incarcerated and expressed hope that he had learned. Cano immediately filed a motion to reconsider his sentence, which the court denied.

¶ 32                                    II. ANALYSIS

¶ 33    On appeal, Cano first contends that the trial court abused its discretion when it admitted into evidence proof of other crimes. He argues that K.C.'s other-crime testimony was more prejudicial than probative due to the dissimilarity between K.C. and H.C.'s allegations, the frequency of assaults against K.C., and the unreliability of K.C.'s allegations, due to her delayed outcry.

¶ 34    Where a defendant is charged with predatory criminal sexual assault, section 115-7.3 of the Code authorizes the admission of evidence that the defendant committed other sex offenses, which "may be considered for its bearing on any matter to which it is relevant." 725 ILCS 5/115-7.3(a), (b) (West 2010). In considering whether to admit such evidence, the court shall "weigh[] the probative value of the evidence against undue prejudice to the defendant," and may consider all "relevant facts and circumstances" including "the proximity in time to the charged or

predicate offense; [and] the degree of factual similarity to the charged or predicate offense." *Id.* § 115-7.3(c).

¶ 35    One of the considerations in determining whether other-crimes evidence is more prejudicial than probative is whether it will become the focus of the trial or otherwise be misleading or confusing to the jury. *People v. Watts*, 2022 IL App (4th) 210590, ¶ 52. The rationale for not permitting "mini-trials" of collateral offenses is to reduce the risk of unfair prejudice, jury confusion, or delay. *Id.* However, unlike common-law other-crimes evidence, section 115-7.3 permits the use of other-crimes evidence to show propensity, and the danger of unfair prejudice under section 115-7.3 is therefore significantly reduced. *Id.* ¶ 53. Thus, while common-law other-crimes evidence must be carefully limited to what is necessary to illuminate the issue for which it was introduced, the trial court is not required to do so on a section 115-7.3 motion. *Id.*

¶ 36    While there may be cases where the sheer volume of other-crimes evidence renders it unduly prejudicial, there is no rule that the instances of other crimes cannot outnumber the charged offenses. *Id.* ¶¶ 56-57. Propensity evidence constitutes an improper "mini-trial" only if it was so excessive as to cause jury confusion or unnecessary delay. *Id.* ¶ 57. We review the trial court's evidentiary decision for abuse of discretion. *Id.* ¶ 60.

¶ 37    After reviewing the record, we find the trial court did not abuse its discretion in admitting K.C.'s other-crimes testimony. Here, among the facts and circumstances before the trial court was the fact that K.C. had testified in an earlier trial as to the sexual abuse perpetrated by Cano and a jury had convicted Cano of sexually abusing her. As to the similarity and timing of the offenses, while the testimonies of H.C. and K.C. were not identical (as Cano has consistently asserted), we find highly significant the similarity in both victims' accounts—they were both Cano's preteen daughters, whom he victimized during weekend visits in his home throughout overlapping time

periods. Lastly, K.C.'s testimony did not become an undue focus of the trial or outweigh the evidence regarding H.C., nor was K.C.'s account confusing or misleading. In other words, K.C.'s testimony was properly and coherently focused upon the acts and time period for which Cano was earlier convicted, and she did not touch upon matters underlying the PCSA charges of which Cano was acquitted. In sum, we find that K.C.'s other-crimes testimony was properly admitted, where it was not more prejudicial than probative.

¶ 38    Cano nevertheless argues that the State lost the other-crimes motion in his prior case, 18 CR 10950, and the trial court here should have followed the earlier trial court's decision. However, we find the earlier motion distinguishable. At the hearing on the motion in his 2018 case, the State relied upon an offer of proof. At the time of the instant other-crimes motion, K.C. had since testified regarding Cano's actions. Moreover, a jury found K.C. credible, to the point of convicting Cano beyond a reasonable doubt of sexually abusing her. K.C.'s testimony in this case was limited to the sexual abuse allegations of which Cano was convicted. While Cano emphasizes his acquittal of PCSA in the earlier case, it is axiomatic that a trier of fact may accept or reject all or part of a witness's testimony (*People v. Corral*, 2019 IL App (1st) 171501, ¶ 85), and we feel no need to entertain the possibility that his earlier aggravated criminal sexual abuse conviction "was in the nature of a compromise verdict," as Cano argues.

¶ 39    Relying on *People v. Cardamone*, 381 Ill. App. 3d 462 (2008), for the proposition that a large volume of other-crimes evidence may make otherwise probative other-crimes evidence overly prejudicial, Cano points out that K.C. testified to multiple instances of sexual abuse during the relevant period. However, as stated above, while there may be cases where the volume of other-crimes evidence was unduly prejudicial, there is no rule that the instances of other crimes cannot outnumber the instant charged offense. *Watts*, 2022 IL App (4th) 210590. ¶¶ 56-57.

Propensity evidence is an improper "mini-trial" only if it was so excessive as to cause confusion or unnecessary delay. *Id.* ¶ 57.

¶ 40 In *Cardamone*, the trial court admitted testimony regarding at least 158 uncharged acts against 15 victims, which this court found to be an overwhelming volume of other crimes evidence and undoubtedly more prejudicial than probative. *Cardamone*, 381 Ill. App. 3d at 491-93, 497. Here, in contrast, K.C. was the only other-crimes witness. K.C. testified that Cano frequently sexually abused her, in a course of conduct. This is contrary to *Cardamone*, where multiple distinct incidents against numerous victims were admitted. Indeed, this court has previously found *Cardamone* to be an extreme and easily-distinguished case. *Watts*, 2022 IL App (4th) 210590, ¶¶ 57-59; *People v. Arze*, 2016 IL App (1st) 131959, ¶¶ 98-100.

¶ 41 Cano next contends that his 30-year prison sentence is excessive in light of his lack of criminal history, evidence of rehabilitation, and the mitigating factor that he was a victim of sexual assault as a child.

¶ 42 The Illinois Constitution requires a trial court to impose a sentence that reflects both the seriousness of the offense and the defendant's rehabilitative potential. Ill. Const. 1970, art. I, § 11. Thus, in fashioning a sentence, the court must balance the retributive and rehabilitative purposes of punishment, carefully considering all factors in aggravation and mitigation. *People v. Hussain*, 2024 IL App (1st) 230471, ¶ 43. The factors include the defendant's age, demeanor, habits, mentality, credibility, criminal history, moral character, social environment, and education, as well as the nature and circumstances of the offense and the defendant's conduct in committing it. *Id.* The trial court is not required to recite and assign a value to each aggravating and mitigating factor. *Id.* ¶ 44. We give great deference to the trial court's judgment regarding sentencing, since it had

the benefit of observing both the defendant and the proceedings. *People v. Clark*, 2024 IL 127838, ¶ 76.

¶ 43    The seriousness of the offense is the most important factor in determining an appropriate sentence, and the court is not required to give greater weight to mitigating factors than to the seriousness of the offense, nor does the presence of mitigating factors either require a minimum sentence or preclude a maximum sentence. *Hussain*, 2024 IL App (1st) 230471, ¶ 44. The trial court is presumed to have properly considered all mitigating factors and any rehabilitative potential before it, and the defendant bears the burden of affirmatively demonstrating the contrary. *Id.*

¶ 44    The trial court has broad discretion in imposing a sentence, and we review the trial court's sentence for abuse of that discretion. *Id.* ¶ 42 (citing *People v. Alexander*, 239 Ill. 2d 205, 212 (2010)). In the sentencing context, an abuse of discretion occurs when a sentence is manifestly disproportionate to the nature of the offense. *Id.* We will not substitute our judgment for that of the trial court merely because we would have weighed the sentencing factors differently. *Clark*, 2024 IL 127838, ¶ 76.

¶ 45    At the outset, we note that Cano's 30-year sentence for predatory criminal sexual assault falls within the permissible statutory range. Predatory criminal sexual assault is a class X felony punishable by a prison term of 6 to 60 years. 720 ILCS 5/12-14.1(b) (West 2010). As Cano's sentence falls within that range, we must presume the sentence is proper barring affirmative evidence to the contrary. *People v. Villalobos*, 2020 IL App (1st) 171512, ¶ 73.

¶ 46    Cano does not dispute that his sentence is within the permissible sentencing range. Rather, he argues that the trial court afforded insufficient weight to significant mitigating factor, including indications of his rehabilitation and demonstrations of his drive for self-improvement, the sexual abuse he suffered during childhood at the hands of his family members, the fact that his crimes

were not committed against the public, and that he had essentially no criminal record. However, the record reflects that all these factors were placed before the trial court at sentencing. The court expressly stated that it had reviewed the PSI, and it acknowledged Cano's self-improvement while incarcerated, referenced his sexual abuse as a child, and noted his subsequent drug and alcohol abuse. Given this record, Cano essentially asks us to reweigh the aggravating and mitigating factors and assign them new weight, which we cannot do. See *People v. Webster*, 2023 IL 128428, ¶ 32 (absent an abuse of sentencing discretion or other reversible error, the appellate court cannot modify a sentence or remand for resentencing).

¶ 47 In passing sentence, the court also noted factors which countered Cano's mitigating evidence and emphasized the seriousness of his offense. Specifically, the court observed that Cano victimized his own daughter, H.C., when she was only six years old, and that Cano ended visits with his daughters only after sexually assaulting H.C. and sexually abusing K.C. As mentioned, the seriousness of the offense is the most important factor in determining an appropriate sentence. *Hussain*, 2024 IL App (1st) 230471, ¶ 44. We find that the trial court did not abuse its discretion. See *Id.* (the court is not required to give greater weight to mitigating factors than to the seriousness of the offense). On this record, we cannot conclude that Cano's 30-year prison sentence, near the middle of the applicable range, is manifestly disproportionate to the nature of his offense. *Id.* ¶ 42.

¶ 48                         III. CONCLUSION

¶ 49 Accordingly, for the reasons stated above, the judgment of the circuit court is affirmed.

¶ 50 Affirmed.