NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240718-U

NO. 4-24-0718

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 1, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Rock Island County |
| DEAN R. LAWSON JR., | ) | No. 20CF414 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Peter W. Church, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Lannerd and Grischow concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed defendant's convictions and sentences and remanded the case for defendant to file a waiver of the assessments imposed against him, finding (1) defendant acquiesced to closing the courtroom during the minor victim's testimony; (2) defendant forfeited review of his claims trial counsel was ineffective for failing to object to (a) expert testimony and (b) the State's rebuttal closing argument; (3) second-prong plain error review cannot be invoked to address whether the trial court erred in considering vulgar statements made by two witnesses at sentencing; and (4) defendant cannot raise for the first time on appeal error related to the filing of an assessment waiver.

¶ 2        Following a jury trial, defendant, Dean R. Lawson Jr., was convicted of seven counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2020)) and sentenced to consecutive terms of 15 years' imprisonment, for an aggregate sentence of 105 years. On appeal, defendant argues (1) he was denied his right to a public trial when the media and his mother, Crystal Lawson, were excluded from the proceedings while the victim, K.J.A., testified; (2) his trial counsel was ineffective for failing to object to (a) a sexual assault nurse

examiner (SANE nurse) providing expert testimony and (b) the State's rebuttal closing argument concerning the absence of defendant's DNA found in K.J.A.'s mouth after she fellated him; (3) alternatively, the cumulative effect of trial counsel's failure to object on these two grounds prejudiced him; (4) error arose when two witnesses made inflammatory statements at sentencing; and (5) posttrial counsel was ineffective for failing to file, on defendant's behalf, an application to waive the sentencing assessments the trial court imposed. We affirm and remand.

¶ 3                                 I. BACKGROUND

¶ 4                     A. Before the Evidence Was Presented at the Trial

¶ 5             During pretrial proceedings, defendant's tendered witness list included his mother, Crystal.

¶ 6             Before trial and after a jury was selected, the following exchange was had outside the jury's presence.

> "THE COURT: Okay. So we're making a short record ***. State is indicating to the Court that it intends its first witness would be [K.J.A.], who is a minor, and the State has a counselor that the minor uses as support—
>
> MS. GARDNER [(ASSISTANT STATE'S ATTORNEY)]: Correct.
>
> THE COURT: —has indicated or requested that that counselor be allowed in the courtroom during [K.J.A.'s] testimony. And there's no objection from Ms. Fambro-Carter for that.
>
> MS. FAMBRO-CARTER [(DEFENSE COUNSEL)]: No.
>
> THE COURT: However, the Defendant's mother has indicated that she wishes to be present at all parts of the proceedings, and the State is objecting to that because it feel[s] that the Court should accommodate [K.J.A.] to some extent

- 2 -

in her emotional needs as far as her testimony goes.

And I understand you want her in there.

You're objecting.

MS. GARDNER: Correct.

THE COURT: All right. It's a hard call, but the fundamental here is that [defendant] certainly always has the right to be present, see, and hear every single person testify in the courtroom. That's called the right of confrontation. The scope of that is limited to [defendant].

Now, we also have public courtrooms and they are to be open to the public, but the Court has inherent in its authority and discretion the ability to close the courtroom or seal the courtroom under certain circumstances. The classic example would be one of those circumstances being an allegation of some type of sex offense involving the minor witness who is testifying. So in the exercise of the Court's discretion, at least with respect to [K.J.A.'s] testimony, the person that will be present in this courtroom is the counselor, [defendant]—obviously, everybody in here[, meaning the attorneys and court personnel]—but I'm going to exclude everybody else.

MS. FAMBRO-CARTER: Okay.

THE COURT: All right.

MS. FAMBRO-CARTER: Thank you, Your Honor.

THE COURT: Yes."

¶ 7    After the jury was sworn, the following exchange was had:

"THE COURT: On the record, Defendant is present. Jury is not present.

We are back in court on [this case], People versus [defendant].

[Defendant], again, joins us in the courtroom. Ms. Fambro-Carter for defendant.

You're fine, sir.

Ms. Gardner for the State.

And we're going to be beginning with opening statements here in just a few moments. We've also had some discussions regarding one of the witnesses the State intends to call to testify at trial. Court's made a ruling with regard to that witness. *The Court is going to close the courtroom for that witness.*

So I see people sitting in the gallery, including the state's attorney's intern. *Nobody is going [to] remain in the courtroom except for one counselor.* That was the Court's ruling.

So you're welcome to stay for opening statements. You're welcome to come back at some point in the future when that witness is no longer testifying, but for purposes of what we're going to do in the courtroom that was the Court's ruling. *So I know you'll all abide by that.*" (Emphases added.)

¶ 8 After the parties gave their opening statements, the trial court took a short recess and excused the jury. Presumably, the courtroom was closed at this time.

¶ 9 When the jury returned, the State called K.J.A. to testify. No record was made of who remained in the courtroom during K.J.A.'s testimony, and defendant's attorney never objected to the limited closure of the proceedings at any point. (Even after K.J.A. testified—the only testimony of the day—defense counsel made no record of any objection to the proceedings when given an opportunity by the trial court.)

¶ 10 B. The Evidence Presented at the Trial

¶ 11 Before K.J.A. testified, neither party made a motion to exclude witnesses from the proceedings. However, after the State's fourth witness testified, the State moved to exclude witnesses. The trial court granted the State's motion at that time. Defendant never objected.

¶ 12 K.J.A. testified defendant was caught forcing her to fellate him on May 26, 2020. At the time, defendant was 29 years old, and K.J.A. was 9 years old. Defendant was her uncle, and they lived together in the same home with various other family members. K.J.A. stated the assaults had been going on for three years, which would have been since she was six years old. She was in shock when it began, did not know what to do, and believed she would get in trouble if anyone knew about it.

¶ 13 K.J.A. indicated defendant used his hands to touch her shoulder, elbow, breasts, "front part" (later described as her vagina), and "butt" or anus while she was clothed and unclothed. When K.J.A. was dressed, defendant would touch her underneath her clothing. Defendant used his "front part" (or penis) to touch her mouth, vagina, and anus while she was unclothed. K.J.A. explained defendant's penis penetrated her vagina and anus. K.J.A. stated defendant used his mouth to touch her mouth, breasts, and vagina.

¶ 14 K.J.A. estimated the assaults occurred "maybe like 20, 25-ish" times a month. They usually happened in defendant's bedroom with the door closed, under the covers, and while she and defendant watched movies. Everyone else in the house would be asleep or away from home. Sometimes, defendant woke K.J.A. up or she would creep into defendant's bedroom. When asked how the assaults made her feel, K.J.A. said, "Like I was nothing."

¶ 15 K.J.A., who had a difficult time testifying, stated it was not easy for her to divulge what transpired because she had kept the secret for such a long time. She also stated when defendant was not assaulting her, she had fun with him. He would roller skate with her, jog with

her and her cousins, and teach her how to fight and stand up for herself.

¶ 16　　　　A few hours after defendant was caught, K.J.A. was examined at UnityPoint Trinity Hospital by Kathleen Kilbride, a SANE nurse, who was licensed in Illinois and Iowa in 2015. During her time as a SANE nurse, Kilbride completed 100 exams of sexual assault victims. Of those 100 exams, 50 of them were conducted on minors, with 25 of those exams being performed on children under 13.

¶ 17　　　　K.J.A. did not complain of physical pain during the exam, which Kilbride testified was not uncommon. Kilbride examined K.J.A.'s anus and the outside of her genital area and found they appeared normal. Kilbride explained, "It's normal to be normal a lot of the times in sexual assaults." Kilbride elaborated on this in detail, explaining her conclusion had been proven through research. Defense counsel never objected to this testimony.

¶ 18　　　　Kilbride also collected swabs from various parts of K.J.A.'s body, which were included in a sexual assault kit, along with the necessary paperwork. The paperwork included a questionnaire, with responses indicating it was "unknown" whether K.J.A. had oral contact with defendant's penis and K.J.A. ate and drank after the assault.

¶ 19　　　　Forensic testing revealed no male DNA was found on the swabs Kilbride had taken, and no semen was found on any of the evidence. However, male DNA was found on K.J.A.'s underwear, including the inside and outside waistband, the outer front, and the crotch areas. The DNA found on the underwear matched defendant's DNA, as well as 44% of the male population.

¶ 20　　　　During closing argument, defense counsel commented on the fact that no male DNA was found in K.J.A.'s mouth and intimated this meant K.J.A. had not fellated defendant on May 26, 2020. In rebuttal, the State suggested no male DNA was found in K.J.A.'s mouth

because she ate and drank after the assault. Defendant's trial counsel did not object to this argument.

¶ 21                              C. The Proceedings After the Trial

¶ 22          Shortly after the trial, defendant's trial counsel filed a motion to withdraw. At a hearing, defense counsel asserted:

> "As far as [Crystal] testifying, I did speak with [defendant] as well as [Crystal] about the pros and cons of her testifying, our trial strategy as to whether or not it was in the best interest of [defendant's] case for her to testify, as well as knowing if she sat in the trial she would not be able to be called as a witness. And the decision was for her to sit in trial for the support of [defendant] and to receive the information and process it so that she could be helpful towards [defendant]. And that decision was made and she sat through the whole trial for a full week and so that was known."

¶ 23          The trial court granted the motion to withdraw, new counsel was appointed, and new counsel thereafter filed a posttrial motion, which did not include any of the issues raised on appeal. The court denied the posttrial motion.

¶ 24          At the sentencing hearing, a number of letters from K.J.A. and her family were admitted and read in court. All the letters expressed how greatly traumatized K.J.A. and her family were by defendant's actions. Hunter White, whose relationship to K.J.A. or the family was not detailed in the record, and Heather W., K.J.A.'s mother, used vulgarity in their statements. Defendant's posttrial counsel did not object to any of the statements White or Heather made.

¶ 25          The trial court sentenced defendant to an aggregate term of 105 years'

imprisonment, noting the 15-year consecutive sentences it was imposing on all seven counts of predatory criminal sexual assault of a child was toward the lower end of the sentencing range. See 720 ILCS 5/11-1.40(b)(1) (West 2022) (providing the sentencing range for defendant's offenses was "not less than 6 years and not more than 60 years"). The court also imposed "a mandatory $75 fine, and any fees, costs, or assessments that would be mandatory." The assessments totaled $1,314.

¶ 26 Defendant's posttrial counsel filed a motion to reconsider the sentence. The motion did not include claims raised on appeal regarding error in allowing the use of vulgar language in the victim impact statements or a waiver of the sentencing assessments. The trial court denied the motion.

¶ 27 This appeal followed.

¶ 28 II. ANALYSIS

¶ 29 On appeal, defendant argues (1) he was denied his right to a public trial when the media and Crystal were excluded from the proceedings while K.J.A. testified; (2) his trial counsel was ineffective for failing to object to (a) Kilbride providing expert testimony and (b) the State's rebuttal argument concerning the absence of defendant's DNA found in K.J.A.'s mouth after she fellated him; (3) alternatively, he contends the cumulative effect of trial counsel's failure to object on these two grounds prejudiced him; (4) error arose when Heather and White made inflammatory statements at sentencing; and (5) posttrial counsel was ineffective for failing to file an application to waive the sentencing assessments on defendant's behalf. We consider each issue in turn.

¶ 30 A. The Right to a Public Trial

¶ 31 Initially, we must consider whether defendant procedurally defaulted his claimed

public trial violation through forfeiture or affirmative acquiescence.

¶ 32    First, we address forfeiture. To preserve an issue for our review, a defendant must (1) make an objection at trial when the issue is presented and (2) raise the issue in a posttrial motion. *People v. Schoonover*, 2021 IL 124832, ¶ 22. Failure to preserve an issue in the trial court results in forfeiture on appeal. *Schoonover*, 2021 IL 124832, ¶ 22. "The supreme court has stressed that '[a] contemporaneous objection is particularly crucial when challenging any courtroom closure.' " *People v. Williamson*, 2024 IL App (4th) 230291-U, ¶ 18 (quoting *People v. Radford*, 2020 IL 123975, ¶ 37). In *Radford*, where, like here, the defendant failed to either object at trial or raise the issue in a posttrial motion, our supreme court explained the increased need for a contemporaneous objection under these circumstances, asserting:

> "[The d]efendant fails to recognize that, if there is no objection at trial, there is no opportunity for the judge to develop an alternative plan to a partial closure or to explain in greater detail the justification for it. [Citation.] This need to lodge a contemporaneous objection to a courtroom closure also prevents a defendant from potentially remaining silent about a possible error and waiting to raise the issue, seeking automatic reversal only if the case does not conclude in his favor." *Radford*, 2020 IL 124832, ¶ 37.

¶ 33    Further, where a defendant fails to follow up with a posttrial motion, this too prevents the trial court and the State from making a clear record of what transpired and the reasons therefore. It also reflects what may be the reality of the situation—a claim raised as an afterthought on appeal and not reflective of what actually transpired or what was of concern to the parties or the court at the time, essentially a nonissue at trial.

¶ 34    Defendant's effort to avoid forfeiture at this stage is based on the false premise he

properly raised the issue at trial. Citing *People v. Enoch*, 122 Ill. 2d 176, 190 (1988), a death penalty case, he contends that raising his right to a public trial during the trial was sufficient to preserve it for our review because it is a constitutional issue which can be raised in a postconviction petition. It is true the exception recognized in *Enoch* has been extended to noncapital cases (see *People v. Cregan*, 2014 IL 113600, ¶ 19). However, while defendant asserts correct statements of the law, he never objected at trial when the trial court closed the courtroom during K.J.A.'s testimony. This is fatal to his claim.

¶ 35    Section 115-11 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-11 (West 2022)), permits a limited closure of a courtroom during the testimony of minors who are the victims of certain sex crimes. Section 115-11 provides:

> "In a prosecution for a criminal offense[, such as predatory criminal sexual assault of a child,] when the alleged victim of the offense was a minor under 18 years of age at the time of the offense, the circuit court may exclude from the proceedings while the victim is testifying, regardless of the alleged victim's age at the time of the victim's courtroom testimony, all persons, who, in the opinion of the court, do not have a direct interest in the case, except the media. *** The court shall enter its finding that particular parties are disinterested and the basis for that finding into the record." 725 ILCS 5/115-11 (West 2022).

¶ 36    The State first sought permission to have K.J.A.'s counselor remain during her testimony. Defense counsel, when asked, indicated there was "no objection." Defense counsel then sought permission for Crystal to remain, to which the State objected. After discussing defendant's constitutional right to a public trial, the trial court outlined the circumstances before it, acknowledging they served as an exception. The court then indicated it was going to close the

courtroom to all except defendant, K.J.A.'s counselor, and parties present during the jury selection conference, which we presume did not include Crystal. There was no objection to closing the courtroom to any degree, let alone an objection to the exclusion of Crystal. The court said, other than the counselor and the parties present at the jury selection conference, "I'm going to exclude everybody else." The following exchange then took place:

"MS. FAMBRO-CARTER: Okay.

THE COURT: All right.

MS. FAMBRO-CARTER: Thank you, Your Honor."

¶ 37     Thereafter, defendant made no attempt to make a record of who was being excluded, and no one, at any time, mentioned the media being excluded or present in the first place. While acknowledging defendant's right to a public trial, the trial court noted its inherent authority and discretion to close the courtroom under certain circumstances, including "an allegation of some type of sex offense involving the minor witness who is testifying." Further, the court limited the duration of the closure to the testimony of K.J.A., after which, the court told the spectators, "You're welcome to come back at some point in the future when [K.J.A.] is no longer testifying." The court's closure during K.J.A.'s testimony was clearly premised on section 115-11 of the Code, albeit poorly enunciated by the court and parties.

¶ 38     Perhaps more importantly, defendant later admitted it had been his strategy for Crystal to remain in the courtroom throughout the trial, though she continued to be listed as a witness, something neither the State nor the trial court apparently remembered at the time of the closure. As a result, section 115-11 was not a necessary reason for her exclusion. She was subject to being excluded as a prospective witness until defendant advised otherwise. It is equally apparent from the record that the State failed to move at the beginning of the trial for the

routine, blanket order excluding witnesses, the most common practice in criminal trials, but realized its mistake later and did so. Illinois Rule of Evidence 615 (eff. Jan. 1, 2011) provides, "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." See *In re H.S.H.*, 322 Ill. App. 3d 892, 896 (2001) ("Although there is no statute or supreme court rule that mandates that witnesses be excluded from the courtroom during a trial, it is well settled that the trial court possesses the discretion to do so."). In the absence of any objection to either the closure or exclusion of Crystal for any reason, or any effort to make a record upon which a public-trial claim could be made, defendant has forfeited review of whether his right to a public trial was denied.

¶ 39　　　　Second, forfeiture aside, the record shows defendant affirmatively acquiesced in the trial court's action, which goes beyond mere forfeiture. *In re K.B.*, 2019 IL App (4th) 190496, ¶ 96. "[A] party cannot complain of error which that party induced the court to make or to which that party consented." (Internal quotation marks omitted.) *People v. Page*, 2022 IL App (4th) 210374, ¶ 27. "Where a party acquiesces to a ruling, the party waives the right to challenge the ruling and may not invoke the plain-error doctrine." *Page*, 2022 IL App (4th) 210374, ¶ 27. Instead, as we have said, "A party who acquiesced to a ruling is limited to pursuing a claim of ineffective assistance of counsel." *Page*, 2022 IL App (4th) 210374, ¶ 27.

¶ 40　　　　Having acquiesced to the trial court's handling of the closure, defendant cannot now invoke plain error. As he has not claimed ineffective assistance of counsel in this regard, there is no public-trial issue before us.

¶ 41　　　　In sum, because defendant has procedurally defaulted his right to a public-trial claim, we do not consider the issue.

¶ 42                    B. Ineffective Assistance of Trial Counsel

¶ 43        The State argues defendant forfeited review of the ineffective-assistance issues he raises on appeal. Citing *People v. Ramos*, 339 Ill. App. 3d 891 (2003), the State claims that, because defendant was represented by different counsel at trial and during posttrial proceedings, his ineffective-assistance-of-trial-counsel claims are forfeited, as counsel appointed during the posttrial proceedings could have raised trial counsel's ineffectiveness in a posttrial motion. We agree. In *Ramos*, 339 Ill. App. 3d at 900, the Second District said, "[Courts] apply the [forfeiture] rule to posttrial counsel's failure to include [an] ineffectiveness claim in [the] defendant's posttrial motion" if "the attorney who represented defendant at trial did *not* also draft the posttrial motion." (Emphasis in original.) More recently, in *People v. Fretch*, 2017 IL App (2d) 151107, ¶ 136, the Second District refused to entertain the portion of a defendant's ineffectiveness claim not raised previously by the defendant's replacement counsel. Here, we note from the record, defendant's replacement counsel was given time to obtain and review the trial transcripts in order to develop and present any issues of concern to defendant. Defendant did not express disagreement or concern with any of the issues raised, and there is nothing in the record reflecting an effort to raise them before this appeal. Accordingly, because posttrial counsel could have, but did not, raise trial counsel's ineffectiveness, we do not address any of the ineffective-assistance-of-trial-counsel claims defendant raises on appeal.

¶ 44                                C. Sentencing

¶ 45        Defendant was convicted of seven counts of predatory criminal sexual assault of a child, a Class X felony. 720 ILCS 5/11-1.40(a)(1), (b)(1) (West 2022). A defendant convicted of predatory criminal sexual assault of a child faces a prison term between 6 and 60 years (720 ILCS 5/11-1.40(b)(1) (West 2022)), with multiple sentences for this offense running consecutive

to each other (730 ILCS 5/5-8-4(d)(2) (West 2022) ("The court shall impose consecutive sentences" when "[t]he defendant was convicted of *** predatory criminal sexual assault of a child.")). Defendant's 15-year sentence on each count is 12 years below the midpoint of 27 years.

¶ 46 Defendant recognizes his sentences fall within the permissible range. He argues we must (1) vacate his sentences and remand for a new sentencing hearing because Heather and White made inflammatory statements at sentencing and/or (2) remand the case for posttrial counsel to file on defendant's behalf an application to waive the sentencing assessments.

¶ 47 We consider each issue in turn.

¶ 48 1. *Inflammatory Statements*

¶ 49 In making his argument, defendant acknowledges he again forfeited review of this issue because he neither (1) objected during the sentencing hearing when Heather and White used inflammatory language nor (2) raised the issue in a postsentencing motion. See *People v. Hillier*, 237 Ill. 2d 539, 544 (2010) ("It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required."). Defendant seeks to bypass forfeiture and have us consider his claim under the plain-error rule. See *People v. Hussain*, 2024 IL App (1st) 230471, ¶ 24.

¶ 50 The plain-error rule allows this court to review unpreserved sentencing issues when a clear or obvious error occurred and (1) "the evidence at sentencing was closely balanced" or (2) "the error was so egregious that it denied the defendant a fair sentencing hearing." *Hussain*, 2024 IL App (1st) 230471, ¶ 24. Defendant requests review under the second prong.

¶ 51 Review under the second prong of the plain-error rule, where prejudice is presumed, is "rare," applying only "in those exceptional circumstances where, despite the

absence of objection, application of the rule is necessary to preserve the integrity and reputation of the judicial process." (Internal quotation marks omitted.) *People v. Johnson*, 2024 IL 130191, ¶¶ 53-55. Second-prong plain error arises in the sentencing context only when the error impacts the framework in which sentencing proceeds, rather than a mere error in the sentencing itself. *Johnson*, 2024 IL 130191, ¶ 59. Here, the trial court's alleged consideration of vulgar statements contained in two victim impact statements is not an error impacting the framework of the sentencing hearing. Rather, it is an alleged error in sentencing itself. Accordingly, we find unavailing defendant's request for review under the second prong of the plain-error rule.

¶ 52                                    2. *An Assessment Waiver*

¶ 53          Defendant argues, because posttrial counsel failed to file on his behalf a waiver of the $1,314 in assessments (see Ill. S. Ct. R. 404(e) (eff. Sept. 1, 2023)), counsel was ineffective and this court must remand this case for the filing of a waiver. The State agrees the case must be remanded. However, it contends resolution of defendant's claim is governed by Illinois Supreme Court Rule 472 (eff. Feb. 1, 2024). We agree with the State.

¶ 54          Rule 472 was enacted to limit, among other things, appeals raising monetary sentencing issues by providing trial courts with jurisdiction to address those issues for the first time after sentencing. *People v. Eason*, 2020 IL App (3d) 180296, ¶ 11. Specifically, the rule allows trial courts to retain jurisdiction in criminal cases to correct "[e]rrors in the imposition or calculation of fines, fees, assessments, or costs" at any time following a final judgment. Ill. S. Ct. R. 472(a)(1) (eff. Feb. 1, 2024). The rule also provides, "No appeal may be taken by a party from a judgment of conviction on the ground of any sentencing error specified *** unless such alleged error has first been raised in the circuit court." Ill. S. Ct. R. 472(c) (eff. Feb. 1, 2024). If a party attempts to raise a sentencing error covered by the rule for the first time on appeal, "the

reviewing court shall remand to the circuit court to allow the party to file a motion pursuant to this rule." Ill. S. Ct. R. 472(e) (eff. Feb. 1, 2024). We review *de novo* whether a case must be remanded for compliance with Rule 472. See *People v. Whitaker*, 2024 IL App (1st) 232009, ¶ 46 (stating questions of law, where no deference is given to the trial court's ruling, are reviewed *de novo*).

¶ 55        The plain language of the rule, to which we must defer, mandates this case be remanded for defendant to file an assessment waiver. See *People v. Nibbelin*, 2025 IL App (4th) 240446-U, ¶¶ 37-38 (stating this court remanded the case under Rule 472 for the defendant to file an assessment waiver, noting review was not appropriate under a contention defense counsel was ineffective for failing to file an assessment waiver).

¶ 56        Defendant's arguments to the contrary are not reflected in plain language of the rule, which dictates our decision. See *Nibbelin*, 2025 IL App (4th) 240466-U, ¶ 38.

¶ 57        Given the above, we must remand this case for the limited purpose of allowing defendant to file an assessment waiver, should he so choose.

¶ 58        In all other respects, we affirm the trial court.

¶ 59                                III. CONCLUSION

¶ 60        For the reasons stated, we affirm the trial court's judgment and remand for further proceedings.

¶ 61        Affirmed and remanded.