NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250294-U

NO. 4-25-0294

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 7, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | McLean County |
| ROOSEVELT YARBER, | ) | No. 20CF816 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices Knecht and DeArmond concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court (1) affirmed defendant's sentence to prison following
revocation of his probation because the trial court properly considered his conduct
while on probation as evidence only of rehabilitative potential and (2) remanded
the case to allow defense counsel to file a certification for waiver of court
assessments pursuant to Illinois Supreme Court Rule 404(e) (eff. Sept. 1, 2023).

¶ 2   In August 2020, the State charged defendant, Roosevelt Yarber, with domestic

battery, a Class 4 felony (720 ILCS 5/12-3.2(a)(1), (b) (West 2020)), and aggravated domestic

battery, a Class 2 felony (*id.* § 12-3.3(a-5), (b)). In March 2021, defendant pleaded guilty to

aggravated domestic battery as part of a fully negotiated plea agreement. In accordance with the

terms of the plea, the trial court sentenced defendant to 36 months of probation.

¶ 3   In March 2023, the State filed a petition to revoke defendant's probation. In July

2023, defendant admitted violating his probation by drinking alcohol. In January 2025, the trial

court revoked defendant's probation, resentenced defendant to seven years in prison, and

imposed various fines and assessments.

¶ 4        Defendant appeals, arguing that (1) the trial court abused its discretion by imposing an excessive sentence that punished him for his conduct on probation rather than for the underlying offense and (2) his trial counsel rendered ineffective assistance by failing to file a certification for a waiver of assessments under Illinois Supreme Court Rule 404(e) (eff. Sept. 1, 2023). We affirm defendant's sentence and remand to allow defense counsel to file a certification for waiver of court assessments.

¶ 5                              I. BACKGROUND

¶ 6                      A. The Underlying and Prior Charges

¶ 7        In August 2020, the State charged defendant with domestic battery, a Class 4 felony (720 ILCS 5/12-3.2(a)(1), (b) (West 2020)), and aggravated domestic battery, a Class 2 felony (*id.* § 12-3.3(a-5), (b)), alleging that on August 13, 2020, defendant knowingly strangled Ashley Larkin, a household or family member. The charges also stated that defendant was eligible for extended-term sentencing based on his prior convictions for domestic battery. At the time of the offense, defendant was serving a term of probation for a 2019 domestic battery conviction. Consequently, the State also filed a petition to revoke defendant's probation in the 2019 case.

¶ 8        In March 2021, the trial court conducted a guilty plea hearing at which the parties presented a fully negotiated plea agreement. In exchange for defendant's pleading guilty to aggravated domestic battery, the State agreed to dismiss the domestic battery count and the petition to revoke probation in the 2019 case. The plea agreement provided that defendant would be sentenced to 36 months of probation, 180 days in jail, with credit for 180 days previously served, and various fines and fees to be ordered by the court. As conditions of his probation,

defendant would be required to (1) complete a domestic violence protocol, a mental health evaluation, and a substance abuse evaluation, (2) comply with any recommended treatment, and (3) refrain from consuming alcohol or cannabis.

¶ 9 The trial court admonished defendant of these terms and explained that if sentenced to prison, the applicable sentencing range was 3 to 14 years, followed by a period of 4 years of mandatory supervised release (MSR). The court then admonished defendant of the rights he was giving up by pleading guilty and asked him whether he had been forced or coerced into pleading guilty. Defendant stated that he understood the admonitions and was pleading guilty voluntarily.

¶ 10 Following the admonitions, the State presented a factual basis for the plea. The State asserted it would present evidence showing that on the date of the offense, defendant was dating Larkin. During an argument, defendant grabbed her by the neck with both hands and placed her in a chokehold. Larkin was unable to breathe while defendant did this. When police officers arrived, they observed injuries on Larkin consistent with that conduct.

¶ 11 The trial court accepted defendant's guilty plea, finding it was knowingly and voluntarily made. The court then sentenced defendant in accordance with the agreement and assessed $1,677 in financial penalties.

¶ 12 B. Probation Violations and Revocation Proceedings

¶ 13 1. *Administrative Sanctions*

¶ 14 In November 2021, the probation department filed two administrative sanction notices with the trial court. Defendant was sanctioned for (1) consuming alcohol, as evidenced by a March 2021 drug screen that was positive for an alcohol metabolite, (2) failing to comply

with the previous sanction, and (3) using cannabis, as evidenced by a urine sample taken in September 2021, which showed positive results for cannabis.

¶ 15    In September 2022, the probation department filed another administrative sanction notice, identifying two violations: (1) defendant failed to comply with his previous administrative sanctions and (2) he "failed to report to the probation officer as directed on 7/27/2022 and the month of August 2022."

¶ 16    2. *The Petitions To Revoke Probation*

¶ 17    In March 2023, the State filed a petition to revoke defendant's probation. The petition alleged that defendant violated the terms of his probation by (1) consuming alcohol, (2) using cannabis, (3) failing to report to probation, and (4) failing to complete substance abuse and domestic violence treatment. In April 2023, defendant appeared in court and requested the appointment of a public defender, which the trial court granted after questioning defendant about his income. Defendant then entered a general denial of the allegations.

¶ 18    In May 2023, at a status hearing, defendant requested and was granted a 30-day continuance to consider an offer from the State. Later that month, the State filed a second petition to revoke probation, alleging defendant failed to report to his probation officer as directed for the months of February, March, and April 2023.

¶ 19    In July 2023, the trial court conducted a hearing on the petitions. Pursuant to a document captioned "PLEA AGREEMENT" and filed by the parties, defendant admitted paragraph 3(T)(2) of the first petition to revoke, which alleged that he consumed alcohol on January 13 and 14, 2023, and signed an admission of use form on January 30, 2023, in exchange for the State's dismissing the remaining allegations in the first and second petitions. The parties made no agreement as to defendant's sentence. After admonishing defendant of his extended-

- 4 -

term sentencing range and his rights, the court accepted defendant's admission and set the matter for sentencing in September 2023.

¶ 20                                    C. Delays in Sentencing and New Offenses

¶ 21        Over the next several months, the parties repeatedly agreed to continue the sentencing hearing to allow defendant to complete substance abuse treatment. In February 2024, defense counsel requested another continuance, informing the trial court that defendant was nearly finished with substance abuse treatment and set to start domestic violence treatment, which would take 24 weeks. Defendant had also been reporting to probation. The court agreed to continue the case.

¶ 22        In April 2024, the State filed a third petition to revoke probation, this time alleging that in March 2024, defendant had committed and been charged with the offenses of (1) aggravated fleeing or attempting to elude a peace officer and (2) driving while never having been issued a license. In June 2024, the State filed a fourth petition to revoke probation, alleging that earlier in June, defendant had committed and been charged with the offenses of aggravated battery (great bodily harm) and resisting a peace officer.

¶ 23        In November 2024, the trial court conducted a status hearing. After reviewing the case history, the court and the parties agreed to set the case for a resentencing hearing on the first petition to revoke and a pretrial hearing on the third and fourth petitions to revoke. The court scheduled the hearings for January 2025.

¶ 24                                    D. The Resentencing Hearing

¶ 25        In January 2025, the trial court conducted the resentencing hearing on the first petition to revoke probation. At the beginning of the hearing, the State moved to dismiss the third and fourth petitions to revoke, which the court granted.

¶ 26        The trial court then asked the parties if they had received the presentence investigation report (PSI) and whether they had any additions or corrections. Both parties had received the PSI, and neither requested any substantive changes. The court admitted the PSI, which contained defendant's detailed prior criminal record.

¶ 27        Specifically, the PSI showed that defendant was adjudicated a delinquent minor in 2011 for robbery and sentenced to five years of probation, which was terminated unsatisfactorily in 2013. In 2013, defendant was convicted as an adult of aggravated unlawful use of a weapon and delivery of a controlled substance and was sentenced to serve four years in the Illinois Department of Corrections (DOC). The PSI showed that defendant was paroled for those offenses twice and returned to DOC custody twice before completing his sentence at the end of 2016. In 2018, defendant was charged with and convicted of domestic battery. He received a sentence of probation and was ultimately unsuccessfully discharged. In 2019, he was charged with and convicted of domestic battery (bodily harm) and sentenced to 30 months of probation.

¶ 28        The PSI also detailed the history of the State's petitions to revoke and allegations of probation violations filed in each case in which defendant was sentenced to probation, including the aggravated domestic battery offense on which defendant was being resentenced.

¶ 29                         1. *The State's Argument*

¶ 30        The State presented no evidence in aggravation but relied heavily on the information in the PSI to structure and support its argument, which focused on three areas: (1) defendant's lengthy, violent criminal history, (2) defendant's personal history, and (3) defendant's inability to comply with terms of probation.

¶ 31        The State began by emphasizing defendant's criminal history, beginning with his committing robbery as a juvenile in 2010 and ending with the aggravated domestic battery

offense for which he was being sentenced. The State noted that defendant committed many offenses while he was on probation for an earlier offense and that he was sentenced to prison only once, and when he was released on MSR, he was returned to custody twice. The State also emphasized that defendant had a history of violent offenses, including weapons offenses, a forcible felony, and multiple domestic battery offenses, "culminating with a case in front of Your Honor here today involving strangulation of [an] intimate partner. One of the most serious acts of intimate partner violence.

¶ 32 Regarding defendant's personal history and compliance with probation, the State contended that the PSI showed defendant had "support," including family that he was close to and "children to live a law-abiding life for. But his violence toward his intimate partners is what keeps him here in the justice system and is what brings him before the Court today." The State continued as follows:

> "[W]hat is documented over the next four pages [of the PSI] is the defendant's unwillingness to address the issues that under[lie] what causes his criminal behavior. Despite being given opportunities over the last five or more years to address his issues with intimate partner violence, with violence toward others, with substance abuse issues, which he has indicated he has, we can see that there has been a significant amount of patience with him. And despite being given those opportunities to address those issues, he has been unwilling to comply with those orders.
>
> ***
>
> Pages 18 to 24 of the report illustrate the defendant's inability to comply with even the simplest conditions of probation in reporting to his probation

officer. Multiple documented incidents of failing to report to his probation officer, failing to communicate with the probation officer or to take even the simplest steps for his term of probation."

¶ 33   The State acknowledged that defendant was eligible for probation and "under 730 ILCS 5/5-6-1 [(West 2024)] that a community-based sentence is the preferred sentence unless certain findings are made by the Court." Addressing those findings, the State argued that a community-based sentence was not appropriate and imprisonment was necessary for the protection of the public. The State recommended a sentence of seven years in prison, explaining as follows:

> "The State does recognize that there has been one single or two consecutive sentences in [DOC] over 10 years ago, and there has been no further sentences to [DOC]. But his significant lack of compliance, unsuccessful discharge for any term of probation he's ever been placed on and continued violent behavior, a term in [DOC] is necessary."

¶ 34   *2. Defendant's Argument and Allocution*

¶ 35   Defendant called no witnesses but tendered (1) letters from his sister, a coworker, and a godsister and (2) documents showing that defendant had participated in domestic violence and mental health services at the jail and worked as a "Pod Worker."

¶ 36   Defendant acknowledged that he had extensive involvement with the criminal justice system but argued several mitigating circumstances existed. In particular, defendant asserted that his troubles with the law began when his father died of an illness when defendant was 14 or 15 years old, which was also when his substance abuse issues began. Defendant

acknowledged that he still had a substance abuse problem and that he had started and stopped treatment multiple times. Defendant's attorney stated the following:

"As we can see from his statements in counseling sessions that are contained in the PSI and discussions with probation officers, he has been honest in coming to a realization of his anger issues and realizing this is probably something that I need to deal with. Has he been successful in following through all the way? No, he hasn't. But prior to this sentencing, the Court will recall there were many continuances up until today's date. That is because my client had been righting the ship with probation. In speaking to my client prior to this sentencing—he may talk about this in his statement in allocution if he chooses to—some of the tools that he learned from treatment classes out in the community while on probation, but also while he has been incarcerated down in the jail."

¶ 37        Defendant also argued that he provided a substantial amount of care for his children and family. Defendant had four children and had relationships with all of them that included some caretaking and financial support. The letter from defendant's godsister described him as a positive influence and support person for her children, and defendant's sister's letter reinforced defendant's role as the primary caretaker for his 75-year-old mother, who was battling chronic obstructive pulmonary disease. Defendant also maintained employment for 10 months a year, on average.

¶ 38        In making a recommendation, defense counsel stated, "I do understand with the amount of probation that my client has, that probation is most likely not an option in this particular case." Nonetheless, defense counsel argued that defendant provided value to society

generally and to his family in particular, which counseled against a lengthy period of incarceration, and recommended a sentence of 180 days in jail.

¶ 39    In allocution, defendant stated he had been attending classes and trying to change his behavior in the jail. He said he had learned about how violence had been normalized in his past and that domestic violence required an understanding that he could not blame the victim and had to remove himself from bad situations.

¶ 40            3. *The Trial Court's Judgment*

¶ 41    The trial court then gave its ruling, as follows, which we set forth in its entirety:

"Court's considered the [PSI] that's been prepared in this case. I've considered the evidence that's been presented, arguments of the attorneys, the defendant's statement in allocution. I've considered Defendant's Group Exhibit A1 through A5. I've considered all the statutory factors in aggravation and mitigation. I've considered all relevant factors that a court should consider when imposing a sentence for a serious felony case.

The defendant in this case is being resentenced in relation to a charge of aggravated domestic battery involving strangulation. The defendant has been given ample opportunity on probation to comply with the terms of his probation. He's had significant difficulty in complying with the terms of his probation. He has done some good things down in the jail. He's a pod worker, done other self-help things in the jail. He should be commended for that. There are other positive factors in the [PSI] and activities that [defendant] has engaged in.

The defendant has an extensive prior record. He started out at a very early age in juvenile court with a very serious offense of robbery and graduated to adult

court with a weapons violation and narcotics charge. He was sent to prison and paroled, revoked, paroled, revoked and, ultimately, discharged. He's been unsuccessfully discharged from probation on multiple occasions. He has multiple domestic violence offenses, and he's been involved in, according to the personal history in the PSI, in multiple receiving end and delivering end, of domestic violence throughout his life with various partners.

The Court believes that—first of all, I've considered all factors in aggravation, mitigation whether or not I mention them specifically. I have reviewed the entirety of the [PSI] and considered all arguments and evidence from the attorneys. The Court believes that an additional period of probation deprecates the seriousness of the offense and would be inconsistent with the ends of justice. The Court believes that a sentence to [DOC] is necessary for the protection of the public. The Court believes the State's recommendation of 7 years is appropriate to be served at 85 percent, 4 years of mandatory supervised release, 201 days of credit.

I don't believe he's going to receive credit for the self-help time down in the jail because it's an 85-percent sentence. That will be up to [DOC]."

¶ 42 The trial court imposed the "[o]riginal fines, fees and costs" and ordered them to be paid within one year of defendant's release from prison.

¶ 43 This appeal followed.

¶ 44                                    II. ANALYSIS

¶ 45 Defendant appeals, arguing that (1) the trial court abused its discretion by imposing an excessive sentence that punished him for his conduct on probation rather than for the underlying offense and (2) his trial counsel rendered ineffective assistance by failing to file a

- 11 -

certification for a waiver of fees under Illinois Supreme Court Rule 404(e) (eff. Sept. 1, 2023). We affirm the trial court's sentence but remand to allow defense counsel to file a certification for waiver of fees.

¶ 46                                    A. Defendant's Sentence

¶ 47        Defendant argues that the trial court abused its discretion by focusing on his conduct while on probation—specifically, his consumption of alcohol—rather than the original offense of aggravated domestic battery. Defendant contends that the court's comments at sentencing demonstrate an improper commingling of the underlying offense with his probation violations. We disagree.

¶ 48                            1. *The Applicable Law and Standard of Review*

¶ 49        The trial court has broad discretion when imposing a sentence, and its decision is entitled to great deference. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). A reviewing court will not disturb a sentence on appeal absent an abuse of that discretion. *Id.* "A sentence within statutory limits will not be deemed excessive and an abuse of the court's discretion unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *People v. Pina*, 2019 IL App (4th) 170614, ¶ 20.

¶ 50        When a trial court revokes a defendant's probation, it may sentence the defendant to any term that would have been appropriate for the original offense. *People v. Young*, 138 Ill. App. 3d 130, 134-35 (1985). Although the court cannot punish the defendant for the conduct that constituted the probation violation, it may consider that conduct as evidence of the defendant's rehabilitative potential. *People v. Varghese*, 391 Ill. App. 3d 866, 876 (2009); see *Young*, 138 Ill. App. 3d at 140 ("Conduct which leads to revocation of probation has been regarded as a 'breach'

of the court's trust, or as otherwise causing the court to lose confidence in the defendant's rehabilitative potential."). "[I]t is appropriate for a defendant who conducts himself poorly while on probation to receive a more severe sentence than he originally received." (Internal quotation marks omitted.) *Pina*, 2019 IL App (4th) 170614, ¶ 30.

> "[A] sentence within the statutory range for the original offense will not be set aside on review *unless* the reviewing court is strongly persuaded that the sentence imposed after revocation of probation was *in fact* imposed as a penalty for the conduct which was the basis of revocation, and *not* for the original offense." (Emphases in original.) *Young*, 138 Ill. App. 3d at 142.

¶ 51                                                    2. *This Case*

¶ 52        Defendant argues the trial court abused its discretion by improperly commingling his probation conduct with the original offense. Relying on *Varghese*, defendant contends the court's remarks at resentencing focused almost entirely on his inability to comply with probation conditions—specifically, "irrelevant facts" like jail rule violations and his failure to complete probation in unrelated cases—instead of the original offense of aggravated domestic battery. Defendant asserts this shows the court sentenced him, at least in part, as punishment for his probation violations. We disagree.

¶ 53        First, defendant's reliance on *Varghese* is misplaced. In *Varghese*, the defendant was on probation for a sex offense when he attempted to arrange a meeting with a minor. *Varghese*, 391 Ill. App. 3d at 868. The trial court revoked his probation and sentenced him to seven years in prison. *Id.* On appeal, the appellate court vacated the sentence, concluding that the trial court's comments—describing the defendant's conduct while on probation as "dangerous"

- 13 -

and "intolerable"—clearly showed that the court was punishing the defendant for the uncharged criminal conduct rather than the original offense. *Id.* at 877.

¶ 54　　　　　Unlike *Varghese*, where the defendant's probation violation constituted a serious, new, uncharged criminal offense that raised due process concerns, defendant here admitted to a mere technical violation concerning the consumption of alcohol. The record shows that the trial court did not characterize defendant's conduct as criminal or dangerous but instead focused on his inability to comply with the court's orders.

¶ 55　　　　　This case is more similar to *Pina*, 2019 IL App (4th) 170614, ¶ 37, in which this court affirmed a sentence following a probation revocation for cocaine use, holding that comments about failing to comply with probation reflected a reassessment of rehabilitative potential, not improper punishment. See *Young*, 138 Ill. App. 3d at 140 (noting a defendant's conduct leading to revocation appropriately causes the court to lose confidence in their rehabilitative potential).

¶ 56　　　　　The trial court's comments in this case similarly reflect a reassessment of defendant's rehabilitative potential. They were also directly responsive to the parties' arguments. The State argued that the PSI demonstrated defendant's inability to comply with "even the simplest conditions of probation" and highlighted his "extensive" criminal history. In response, the trial court noted that defendant had been given "ample opportunity" on probation but had "significant difficulty" complying. These comments were appropriate considerations of defendant's rehabilitative potential.

¶ 57　　　　　Furthermore, the record shows that the trial court considered the original offense. The court explicitly stated that defendant was being resentenced "in relation to a charge of aggravated domestic battery involving strangulation." The court also referred to defendant's

history involving domestic violence, stating that defendant had "multiple domestic violence offenses" and had been involved in domestic violence "throughout his life". This history was relevant to the nature of the underlying charge and the likelihood of recurrence.

¶ 58          Although defendant argues that the trial court focused too heavily on his conduct while on probation, the court was not required to ignore defendant's failure to comply with probation. Instead of punishing defendant for consuming alcohol, the court properly utilized that conduct to determine that a sentence of probation was no longer appropriate. The court reasoned that an additional sentence of probation would "deprecate[ ] the seriousness of the offense" and be inconsistent with the ends of justice. Contrary to defendant's claim that these findings demonstrate that the court was punishing him for his probation violation, the court's findings were necessary to explain why it was forgoing a sentence of probation, which both parties agreed was the preferred sentence by statute.

¶ 59          When imposing the specific sentence, the trial court did not mention defendant's probation violation, alcohol, or substance abuse. Defendant pled guilty to a Class 2 felony and, due to his criminal history, was eligible for an extended term of up to 14 years in prison. The court's seven-year sentence falls well within that statutory range. Nothing in the record suggests the court sentenced defendant to seven years as punishment for his conduct while on probation rather than for the original offense. See *id.* at 142.

¶ 60          We also note that this is not a case in which the trial court originally sentenced the defendant to probation, thinking it was an appropriate sentence. Instead, defendant was placed on probation as part of a plea agreement negotiated by the parties. As a result, when defendant was sentenced on the petition to revoke, the court was essentially sentencing defendant for the first time. In other words, because the parties agreed to a specific sentence as part of the guilty plea,

the court had never had the chance to consider and weigh defendant's criminal history, rehabilitative potential, and all the other sentencing factors. Thus, it was entirely proper for the court to focus on defendant's criminal history when fashioning the appropriate sentence.

¶ 61    Accordingly, we conclude that the trial court did not abuse its discretion.

¶ 62    B. Rule 404(e) and Rule 472

¶ 63    Defendant argues that counsel was ineffective for failing to file a certification for waiver of assessments, as required in Rule 404(e). The State responds that, pursuant to Illinois Supreme Court Rule 472 (eff. Feb. 1, 2024), this court lacks jurisdiction over the claim and the case must be remanded to the trial court for defendant to raise the issue there first.

¶ 64    1. *The Applicable Law*

¶ 65    Ineffective assistance of counsel claims are governed by the familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a defendant to demonstrate both (1) deficient performance and (2) prejudice. See *People v. Peterson*, 2017 IL 120331, ¶ 79.

¶ 66    Illinois Supreme Court Rule 404 (eff. Sept. 1, 2023) provides the procedures and requirements for criminal defendants to seek a waiver of court assessments as authorized by section 124A-20 of the Code of Criminal Procedure of 1963 (725 ILCS 5/124A-20 (West 2024)). Rule 404(e) provides, "In any case where a defendant is represented by a public defender, ***, the attorney representing that defendant shall file a certification with the court, and that defendant shall be entitled to a waiver of assessments as defined in 725 ILCS 5/124A-20(a) without necessity of an Application under this rule." Ill. S. Ct. R. 404(e) (eff. Sept. 1, 2023). Both Rule 404 and section 124A-20 require that the application be filed "no later than 30 days after sentencing." Ill. S. Ct. R. 404(a) (eff. Feb. 1, 2024); 725 ILCS 5/124A-20(b) (West 2024).

¶ 67        Illinois Supreme Court Rule 472(a), (c) (eff. Feb. 1 2024) provides that the trial court retains jurisdiction to correct certain sentencing errors "at any time following judgment and after notice to the parties, including during the pendency of an appeal," and states that "[n]o appeal may be taken by a party from a judgment of conviction on the ground of any sentencing error specified above unless such alleged error has first been raised in the circuit court." If a party attempts "to raise sentencing errors covered by this rule for the first time on appeal, the reviewing court shall remand to the circuit court to allow the party to file a motion pursuant to this rule." Ill. S. Ct. R. 472(e) (eff. Feb. 1, 2024). The specified sentencing errors covered by Rule 472 are the following: (1) "[e]rrors in the imposition or calculation of fines, fees, assessments, or costs," (2) errors in *per diem* credit, (3) "[e]rrors in the calculation of presentence custody credit," and (4) clerical errors in the written sentencing order. Ill. S. Ct. R. 472(a)(1)-(4) (eff. Feb. 1, 2024).

¶ 68                                    2. *This Case*

¶ 69        In the present case, defendant was represented by the public defender throughout the proceedings in the trial court, including at sentencing and the motion to reconsider sentence. Rule 404(e) states in no uncertain terms that when a defendant is represented by the public defender, "the attorney representing that defendant *shall* file a certification with the court, and that defendant *shall* be entitled to a waiver of assessments." (Emphases added.) Ill. S. Ct. R. 404(e) (eff. Sept. 1, 2023); see *People v. Garstecki*, 234 Ill. 2d 430, 443 (2009) (holding that the use of "shall" in the supreme court rule at issue "impose[d] a mandatory obligation upon trial courts"). Accordingly, defense counsel rendered deficient performance by failing to file the required certification, and defendant was prejudiced by this failure because he was entitled to a waiver of the applicable assessments. See *People v. Hoskins*, 2025 IL App (4th) 240991, ¶ 84.

¶ 70          In the past, this court has ordered remand for compliance with Rule 404(e) when it has found defense counsel was ineffective for failing to file a certification. See *id.* ("Accordingly, we vacate the trial court's order for a 75% waiver of assessments and remand with directions for the trial court to order a full waiver of assessments."); *People v. Durham*, 2025 IL App (4th) 241284, ¶ 15 ("Because defendant established both prongs of his ineffective-assistance claim, we remand this matter to the trial court to allow defense counsel to file the Rule 404(e) certification of waiver of assessments."); *People v. Harris*, 2025 IL App (4th) 240705-U, ¶ 137 (same). However, as the State points out, this court has also held that Rule 472 covered such claims and remanded for the defendant to file a motion under that rule. See *People v. Nibbelin*, 2025 IL App (4th) 240446-U, ¶ 38; *People v. Lawson*, 2025 IL App (4th) 240718-U, ¶ 55.

¶ 71          Ultimately, the parties are in agreement that (1) this case must be remanded to the trial court and (2) defendant must be allowed to raise his claim for a waiver of assessments. The only dispute is which rule is the proper procedural tool that grants the remand authority. As a practical matter, both routes arrive at the same destination. Nonetheless, we conclude that Rule 404(e) is the correct one to follow because Rule 472 does not apply to defendant's specific claim.

¶ 72          In the present case, defendant does not assert—and the trial court did not commit—any error regarding fines, fees, assessments, and costs at sentencing; the court properly imposed and calculated the assessments required by statute upon defendant. Defendant is not attacking the sentencing order and has no ground to do so. The error that prejudiced defendant is his *counsel's* failure to file a certification of waiver of assessments *after* sentencing. Because the alleged (and actual) error is an omission of counsel, and not an error by the court, Rule 472 does

not apply. See Ill. S. Ct. R. 472(a) (eff. Feb. 1 2024) (expressly stating the rule is "for correcting certain sentencing errors").

¶ 73    Given this context, regardless of whether both rules *can* be used to remedy defense counsel's failure to file a certification for waiver of assessments, we conclude that remand pursuant to Rule 404(e) with specific instructions for defense counsel to comply with that rule is the avenue that *should* be used by appellate courts faced with this recurrent issue to provide the proper remedy. Based on the foregoing, we conclude that (1)  the plain language of Rule 472 does not extend to a defense counsel's failure to comply with Rule 404(e) (because such a failure is not an "[e]rror in the imposition *** of fines, fees, assessments, or costs" (Ill. S. Ct. R. 472(a)(1) (eff. Feb. 1, 2024)) and (2) remand to the trial court with instructions for defense counsel to comply with Rule 404(e) is the only way to ensure a defendant receives the remedy to which he or she is entitled.

¶ 74                              3. *Epilogue*

¶ 75    Having conducted this analysis, we note that this issue is largely an academic debate because, as a practical matter, the sums owed by defendant in this case (and by other defendants in the vast majority of cases) are unlikely ever to be paid. This is especially true considering that cash bond has been eliminated in Illinois, thereby removing the most reliable method of collecting costs from criminal defendants. Because the likelihood is extremely remote that any of these costs and fines will ever be collected from criminal defendants, the expenditure of time by the appellate court and appellate counsel on this subject borders on a waste of judicial resources.

¶ 76    Parties and the appellate court alike agree that defendants are entitled to seek a remedy for their counsels' failure to seek a waiver under Rule 404(e), and as we earlier

explained, both Rule 404 and Rule 472 are capable of resolving the issue. However, appellate review is a particularly inefficient mechanism to address these kinds of claims, which instead should be addressed in trial courts so that a defendant's trial counsel can be ordered to complete the Rule 404(e) certificate and the courts can enter the mandatory waiver.

¶ 77 We note that the Illinois Supreme Court has a chance to provide definitive guidance to litigants and courts alike because that court has granted leave to appeal in *People v. Nibbelin*, 2025 IL App (4th) 240446-U, *pet. for leave to appeal granted*, No. 131825 (entered Sept. 24, 2025). The supreme court provided an excellent resolution to similar problems when it promulgated Rule 472, which was enacted to limit, among other things, appeals raising monetary sentencing issues by providing trial courts with jurisdiction to address those issues for the first time after sentencing. *People v. Eason*, 2020 IL App (3d) 180296, ¶ 11. We respectfully suggest the Illinois Supreme Court likewise provide a definitive answer in cases involving public defender waivers under Rule 404(e) when it issues its ruling in *Nibbelin*.

¶ 78                                    III. CONCLUSION

¶ 79 For the reasons stated, we affirm the trial court's judgment concerning defendant's sentence and remand the cause for defense counsel to comply with Rule 404(e) and the trial court to resolve the issue of a waiver of court assessments.

¶ 80 Affirmed and remanded.